SHONEY'S, INC., Shoney's, Inc.
d/b/a Lee's Famous Recipe
Chicken, Appellant,

v.

Honorable Thomas R. LEWIS, Judge,
Warren Circuit Court, Division
One, Appellee,

Roxanne Herr, Real Party in Interest.

No. 93–SC–214–MR.

Supreme Court of Kentucky.

Jan. 31, 1994.

Reconsideration Denied May 26, 1994.

Richard S. Cleary, Jeffrey A. Savarise, Greenebaum, Doll & McDonald, Louisville, Charles E. English, Sr., Paul Gliatta, English, Lucas, Priest & Owsley, Bowling Green, for appellant.

Dale Golden, Rudloff, Golden & Evans, Bowling Green, for real party in interest.

Thomas R. Lewis, Judge, Warren Circuit Court, Division One, pro se.

### OPINION OF THE COURT BY JUSTICE LAMBERT AND ORDER REVERSING

The motion of appellants, Shoney's, Inc. and Shoney's, Inc. d/b/a Lee's Famous Recipe Chicken, for a Writ of Mandamus was denied, without opinion, in an original action in the Kentucky Court of Appeals. Pursuant to CR 76.36(7)(a), this appeal is as a matter of right.

This litigation involves allegations of sexual harassment brought by the Real Party in Interest, Roxanne Herr, against Shoney's, Lee's, and Mohammed Boka, an employee of Lee's. Prior to commencement of the underlying litigation, on September 21, 1992, Herr's counsel contacted Lee's Senior Vice-President of Human Resources concerning the complaint of sexual harassment. In this conversation, Herr's counsel was informed that Lee's would be represented by counsel and was given the name of such counsel. On September 29, 1992, Herr's counsel spoke with Lee's counsel by telephone about the

possibilities of a pre-litigation settlement. This conversation was confirmed by Lee's counsel in a letter dated October 1, 1992, which detailed the actions his "client" had taken. Subsequent to these conversations and correspondence, Herr's counsel met with and procured sworn statements from two of Lee's employees, a general manager and a relief manager, without consent from or notice to Lee's counsel. The statements concerned the facts and circumstances of the underlying case.

■ On October 26, 1992, Herr, represented by the same counsel, filed her complaint for sexual harassment. Lee's moved to disqualify Herr's counsel and his law firm from the case alleging a violation of SCR 3.130, Rule 4.2, which prohibits communication with a person represented by counsel. Without opinion, the Warren Circuit Court declined to disqualify counsel and denied the request to prohibit use of the sworn statement. Lee's sought a Writ of Mandamus in the Court of Appeals to require Judge Lewis to disqualify Herr's counsel for violating the rule against ex parte contacts with parties known to be represented by counsel, and to suppress the written statements obtained. Lee's seeks to reverse the Court of Appeals' denial of relief and obtain an order directing the Warren Circuit Court to disqualify Herr's counsel and to suppress the evidence obtained by the ex parte communication.

SCR 3.130, Rule 4.2 Communication with Person Represented by Counsel, provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

*Id.* At the trial court hearing on the disqualification, Herr's counsel made the following admissions: (1) that prior to litigation, he was advised that Lee's would be represented by the law firm of Greenebaum, Doll & McDonald (hereinafter "Greenebaum"); (2) that he took written statements from two of Lee's senior managerial employees, without consent of or notice to Greenebaum; (3) that the statements were "very important ... super

important" to Herr's case; and (4) that he had also taken a "stack" of written statements from other Lee's employee's. From this, there is no doubt that the statements "were about the subject of the representation" as provided in SCR 3.130, Rule 4.2.

We turn now to whether Lee's managerial employees were represented parties for purposes of the rule. The comment to the rule provides, in pertinent part, as follows:

■ In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with *persons having a managerial responsibility on behalf of the organization,* and with any other persons whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. (Emphasis added.)

SCR 3.130, Rule 4.2, comment 2. The managerial employees herein are precisely within the group of persons provided for in the comment. It is undisputed that they were of senior managerial rank and such fact allows for no conclusion other than the applicability of the rule.

Finally, we must decide whether SCR 3.130, Rule 4.2, applies both before and after formal proceedings have begun. For this we turn to the plain language of the rule which is without any requirement of a formal proceeding. When an attorney represents a party in a specific matter, that attorney may not communicate with any other represented party about the matter without the consent of opposing counsel. While SCR 3.130, Rule 4.2, comment 1, provides that it does not apply to communications with parties concerning other matters, here it is conceded that the communication was about the underlying case. Both sides rely on *United States v. Jamil,* 546 F.Supp. 646 (E.D.N.Y.1982) rev'd on other grounds, 707 F.2d 638 (2d Cir.1983). In *Jamil,* an individual retained an attorney after having been made aware that he was a target of a grand jury investigation and that an indictment was imminent. The United States subsequently used a wired informant to obtain a statement from the

defendant. The U.S. District Court addressed the issue of whether the rule corresponding to our Rule 4.2 applied prior to an indictment and held that when a person retains counsel to protect him during an investigation, the person becomes a "represented party" for purposes of the ethical prohibition on ex parte contacts.

Pursuant to SCR 3.530, the Kentucky Bar Association has adopted Formal Ethics Opinions. In Opinion KBA E–65, the Association addressed the question we face today. It answered that "A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel ... but should deal only with his counsel." *See* Canon 9, Canons of Professional Ethics. The American Bar Association has opined "It is clear that Canon 9 is to be construed literally and does not allow a communication with an opposing party, without the consent of his counsel, though his purpose be merely to investigate the facts." Accordingly, we hold that the communication between Herr's counsel and Lee's managerial employees was improper.

■ We must now consider the appropriate remedy. Lee's contends disqualification of the Herr's counsel is required and cites many Kentucky Bar Association disciplinary actions in support of this position. While there appears to be no direct Kentucky authority on Motions to Disqualify counsel nor on the remedy therefore, other jurisdiction have disqualified counsel in similar situations.

In *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080 (S.D.N.Y. 1989), the United States District Court for the Southern District of New York, under its version of Rule 4.2, disqualified the defendant's law firm because a partner had discussed the merits of the case with the plaintiff outside the presence of the plaintiff's counsel. Noting that the firm in question had expended thousands of hours of work on the case, the District Court nevertheless found it had an obligation "to disqualify the offending counsel when the integrity of the adversarial process is at stake." It continued, "a trial judge should primarily assess the possibility of prejudice at trial that might result from the attorney's unethical act" with

any doubt "to be resolved in favor of disqualification." *Id.* at 1083. *See also Shelton v. Hess*, 599 F.Supp. 905 (S.D.Tex.1984). Herr's counsel relies on *W.T. Grant Co. v. Haines*, 531 F.2d 671 (2d Cir.1976), where the United States Court of Appeals for the Second Circuit refused to disqualify an attorney who interrogated a defendant-employee moments after filing a complaint. *W.T. Grant* is distinguishable from the case at bar in that the defendant-employee was not represented by counsel at the time of the interrogation. *Id.* at 675. Here, the witnesses interrogated were high level employees of a represented party, a fact of which Herr's counsel was fully aware. We conclude that the trial court erred in failing to order disqualification of Herr's counsel and that the Court of Appeals erred in failing to grant a writ of mandamus.

With respect to the statements wrongfully obtained, the only satisfactory remedy is suppression. In *Bender v. Eaton*, Ky., 343 S.W.2d 799 (1961), the plaintiff was ordered by the court to produce certain medical reports. The plaintiff sought a writ of prohibition to prevent enforcement of the order. The Court of Appeals agreed. In granting prohibition, the court held that "once the information is furnished it cannot be recalled." *Id.* at 802. It opined that if evidence is improperly discovered a later objection may be unavailing and the harm complete. In the present case, if the improperly obtained statements are not suppressed, they may acquire an independent significance, such that irreparable prejudice may result. In *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080 (S.D.N.Y.1989), it appears to have been taken for granted that suppression of the statements was the appropriate remedy for such a violation. Following its detailed discussion of the facts and law with respect to disqualification and concluding that it was necessary, the *Papanicolaou* Court ordered various depositions deleted from the record.

We recognize that disqualification of a party's counsel and suppression of information obtained by that counsel is a drastic remedy and the decisions of the courts below reflect a proper reticence. Nevertheless, in circum-

stances such as these, with the integrity of the adversarial process is at stake, we must make every effort to prevent harm to the civil justice system.

For the foregoing reasons, we reverse the Court of Appeals and remand this cause to the Warren Circuit Court with directions to enter an order disqualifying Dale Golden and the firm of Rudloff, Golden & Evans from further participation in this litigation. The trial court shall further require said attorneys to disclose to Lee's counsel the identity of all persons from whom such statements were taken and refrain from any further disclosure of the substance of the statements in question.

IT IS SO ORDERED.

STEPHENS, C.J., and REYNOLDS and SPAIN, JJ., concur.

WINTERSHEIMER, J., concurs in result only.

LEIBSON, J., dissents by separate opinion in which STUMBO, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The Kentucky Rules of Civil Procedure and the Kentucky Rules of Evidence specify the rules related to discovery and to the admission and exclusion of evidence. None of these rules authorize suppression of statements taken from employee witnesses by an adverse party, even if some of the employees happen to function in some type of managerial capacity. If the statements taken here from managerial employees related to factual observations rather than to matters covered by the attorney/client privilege or by the work product rule, they were not protected by CR 26.02 or any other Civil Rule. On the contrary, at this stage of this litigation we should assume that use of the statements will be confined to factual matters bearing on the plaintiff's allegations of misconduct, matters within the scope of discovery and not privileged: that the statements will be used only as authorized by the Kentucky Rules of Evidence. We should assume that the trial court will be quite capable of using its authority to keep out privileged matters and

inadmissible evidence, as the rules require, without our interceding by writ of prohibition or mandamus.

The question here is purely one of ethical violation, and the appropriate remedy. No Kentucky authority suggests disqualifying a party's attorney and suppressing any and all use of the evidence he has obtained is an appropriate remedy in present circumstances. Certainly Rule 4.2 of the Rules of Professional Conduct, which we have adopted in SCR 3.130, does not so provide.

A lawsuit is a search for the truth, and this legal principle is too important to sacrifice to the particular ethical violation charged here. This legal principle should be the overriding consideration in deciding whether suppression of the evidence contained in the statements obtained from Shoney's employees is the appropriate remedy for the ethical violation the Majority believes has occurred here.

We must consider very carefully in deciding when the interest at stake justifies suppressing the truth. As Justice Scott Reed so aptly put it in *Nazareth Literary & Benevolent Inst. v. Stephenson*, Ky., 503 S.W.2d 177 (1973), in considering questions of this nature we must first ask, "wherein the public interest lies." When should the court craft a rule creating a privilege where none exists, a privilege which will be used to suppress evidence of the truth? The interest of justice lies in keeping such privileges few in number and carefully scrutinized, taking care to construe suppression to apply only where essential to protect some interest more important than a just determination of the pending case according to the true facts. Protecting Shoney's corporate interests against statements freely given by their employees about relevant facts is *not* such an interest.

Elsewhere in SCR 3.130, where appropriate, as where a client insists on presenting false testimony, the duties of a lawyer in conducting the litigation are specifically provided. Here, even were we to assume that Roxanne Herr's counsel should be disqualified in this case because he violated an ethical rule pertaining to the management of the case, certainly the remedy further provided to Shoney's, entirely suppressing any use of

the statements in the present litigation, is a draconian remedy. It is made up entirely of whole cloth and it serves only to prevent rather than assist in discovery of the truth.

*Bender v. Eaton,* Ky., 343 S.W.2d 799 (1961), cited in the Majority Opinion, does not address the present facts. It involved providing a writ of prohibition to prevent a trial court from enforcing an unauthorized order compelling discovery. Once the trial court forced the party complaining to submit to the discovery sought, the genie was out of the bottle. Here the opposite situation obtains. Discovery from Shoney's employees has been already freely obtained; in a manner the Majority concludes unethical, but nevertheless one forbidden by no law or rule of legal procedure. The genie is already out of the bottle, and no rule authorizes suppressing factual information already obtained.

The obvious remedy of a party aggrieved by the unethical conduct of a lawyer is to complain to the Kentucky Bar Association, a complaint which, if appropriate, will be followed by punishment of the lawyer commensurate with the seriousness of his misconduct. In this case, instead of punishing the lawyer, we are punishing the client, presumably innocent of any wrongdoing in this affair. Worse yet, we are punishing the judicial process by suppressing evidence otherwise admissible in the search for the truth.

The attorney who took the statements questions whether there was really an ethical violation here. Certainly, when employed, a competent attorney investigates his client's case *before* filing suit to avoid, if possible, filing a frivolous lawsuit. Should communicating with Shoney's corporate counsel about a potential claim while continuing the investigation, in itself, foreclose the right to further investigate the facts before filing suit? We seem to have so concluded in this case, painting with a broad brush where fine lines are called for. Whether there was any impropriety here, and if so, exactly what was inappropriate and what was not, is quite unclear. While the questions of impropriety raised here are matters which may be as reasons to deprive the client, Herr, of the benefit of evidence obtained in the investigation of her

case. Suppressing statements counsel obtained is not justified so long as the information obtained involved neither privileged material, nor proof of deceptive, false or misleading conduct so significantly tainting the integrity of the statements as to destroy their evidentiary value.

So far as this record shows, before obtaining the statements, Herr's counsel made appropriate disclosures to Shoney's employees regarding his representation and the nature of the investigation. In such circumstances, as both the trial court and the Court of Appeals correctly perceived, the record presented no reason for taking the action Shoney's demanded, disqualifying Herr's lawyer and suppressing any use of the statements he obtained. The reasons for the remedy imposed here exist only in the imagination of Shoney's counsel. Shoney's has succeeded in using this Court to turn what is (if anything) a quarrel over ethics into a defense to this action.

STUMBO, J., joins this dissent.