**Phillip LOVELL and Shirley Lovell, Appellants,**

v.

**Hon. Jerry WINCHESTER, Judge McCreary Circuit Court, Appellee,**

and

**Minnie Kidd and Charles E. King, Real Parties In Interest.**

No. 96–SC–690–MR.

Supreme Court of Kentucky.

Jan. 30, 1997.

Rehearing Denied April 24, 1997.

Richard Clay, Danville, for Appellants.

Jerry D. Winchester, Corbin, for Appellee.

Charles E. King, Pine Knot, for Real Parties in Interest.

GRAVES, Justice.

Pursuant to CR 76.36, Appellants, Phillip and Shirley Lovell, request that this Court issue a writ of mandamus ordering the trial court to disqualify attorney Charles King as

counsel for Minnie Kidd in their suit against Kidd in the McCreary Circuit Court.

On April 17, 1992, Appellants consulted King about representing them in a claim alleging a shortage of acreage in land purchased from Kidd in 1991. According to an affidavit filed by Appellants, they visited King at his office, discussed their claim and left their original documents pertaining to the land transaction with King. Approximately one month later, King returned the documents along with a letter declining representation. Appellants subsequently retained another attorney in 1994 and sued Kidd. Kidd, then, engaged King to defend her in the same lawsuit.

After Kidd filed an answer, which King prepared, Appellants alleged a conflict of interest and moved to disqualify King pursuant to Rules 1.7 and 1.9 of the Rules of Professional Conduct. In response, King argued that he recalled nothing about the consultation with Appellants, and, in fact, could confirm their visit only by referring to an old office calendar. The circuit court refused to disqualify King and Appellants sought a writ of mandamus in the Court of Appeals. The Court of Appeals, without comment, denied relief and appeal to this Court ensued.

Appellants argue that their initial consultation in which they disclosed information in confidence to King precludes his representing an opposing party in the same matter. Appellants rely primarily on Rules 1.7 and 1.9 of the Rules of Professional Conduct, as well as our recent decision in *Shoney's, Inc. v. Lewis*, Ky., 875 S.W.2d 514 (1994). Appellants assert that under the rule governing attorney-client privilege, KRE 503, they are entitled to rely on the confidentiality of any statements made to King during the initial consultation.

King responds by reasserting his inability to recall anything concerning his meeting with Appellants in 1992. King also claims that a complaint arising out of the matter filed by Appellants with the Kentucky Bar Association has been fully dismissed; unfortunately no evidence of such exists in the record. Further, King cites the commentary 14 to Rule 1.7, which notes that the primary responsibility for resolving conflicts of interest rests with the lawyer undertaking representation, and that objections on conflict grounds should be viewed with caution due to their potential for "misuse" or "harassment." *See* SCR 3.130(1.7) cmt. 14.

Having considered the arguments of both parties, we grant the writ of mandamus. KRE 503(a)(1) defines a client as "a person . . . who is rendered professional legal services by a lawyer, *or who consults a lawyer with a view to obtaining professional legal services from the lawyer.*" (emphasis added). This definition makes it clear that an individual who consults a lawyer is entitled to the privilege even though representation does not subsequently occur. In this case, it is uncontradicted that Appellants consulted King with the intention of employing him to represent them in their suit against Kidd.

Unquestionably, once the initial consultation transpired, Appellants became "clients" under the definition in KRE 503(a)(1) and the attorney-client privilege attached. After King retained documents pertaining to the case for a month, the presumption arises that he became knowledgeable of their contents and that he learned confidential information relevant to the case. This gives rise to a conflict of interest and King was obligated to decline representation of Kidd under Rules 1.7 and 1.9 of the Rules of Professional Conduct.

We cannot accept King's assertion that disqualification is unnecessary due to his lack of recall regarding the consultation with Appellants. King not only discussed the matter with Appellants, but retained their documents for approximately a month before declining representation. We must conclude that King made some type of value judgment as to the merits of Appellants' case which resulted in his declination of the matter.

Although King argues that Appellants cannot demonstrate how his representation of Kidd would harm their case, we believe that the situation creates a perception of betrayal and disloyalty which cannot be condoned. To sanction this professional conduct merely on the claim that he recalls nothing of the prior contact impairs public confidence in the legal system. Further, there is the potential

to prejudice clients in the employ of legal counsel. Maintaining public confidence in the legal system requires that preservation of client confidence should outweigh the interests of individual lawyers and individual clients in freely contracting with each other. Client confidence should prevail among these competing interests. Thus, we are of the opinion that granting the extraordinary relief requested by Appellants is consistent with the goals of KRE 503 and the policies underlying the Rules of Professional Conduct.

■■■ Consultation with a lawyer may ripen into a lawyer/client relationship that precludes the lawyer from later undertaking a representation adverse to the individual who consulted him. The lawyer/client relationship can arise not only by contract but also from the conduct of the parties. Courts have found that the relationship is created as a result of the client's reasonable belief or expectation that the lawyer is undertaking the representation. Such a belief is based on the conduct of the parties. The key element in making such a determination is whether confidential information has been disclosed to the lawyer.

In *Green v. Montgomery County Alabama*, 784 F.Supp. 841 (M.D.Ala.1992), the lawyer with whom the plaintiff discussed underlying facts of a lawsuit in a telephone conversation several months before the plaintiff filed suit was disqualified from representing the defendant. The court reasoned that the telephone consultation developed into a lawyer/client relationship because the plaintiff consulted the lawyer intending to seek legal advice and assumed he could speak confidentially with the lawyer.

As articulated in *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct:*

> [t]he idea that lawyers owe duties to ex-clients is neither controversial nor novel. It is an outgrowth of the agency law principle that an agent's duties to his principal continue, albeit in reduced scope, after the agency relationship has been terminated. A lawyer has no duty to accept a particular client or matter, but once having accepted, she loses a certain amount of freedom to take on new matters, even when the first

representation is over. The conflict of interest rules thus give both present and former clients a limited form of veto over their lawyers' choice of work.

The principle stated in Rule 1.9 is a necessary extension of the client-lawyer relationship; otherwise a lawyer might terminate a relationship and use the confidential information of his former client to make himself more valuable to a new (and adverse) client. Although it might be argued that this kind of betrayal is so obviously improper as to not require a rule, clients deserve explicit assurance during the representation that they have no need to fear adverse consequences after the representation is terminated. Accordingly, Rule 1.9(a) prevents the disloyal act of switching sides in the same or a related matter, while Rule 1.9(c) prevents use of information about a former client to his detriment. Put another way, subsection (a) extends the protections of Rule 1.7 to former clients, while subsection (c) does the same for Rules 1.6 and 1.8(b). (Footnotes omitted.)

1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 1.9:103 (2d ed. 1990).

■ Even though the comment to Rule 1.9 specifically rejects the "appearance of impropriety" standard in favor of a fact-based test applied to determine whether the lawyer's duty of loyalty and confidentiality to a former client will likely be compromised by the subsequent representation, the appearance of impropriety is still a useful guide for ethical decisions. The Arkansas Supreme Court found that although the language of Canon 9 regarding avoiding even the appearance of impropriety was not adopted as part of the Arkansas rules of professional conduct, lawyers still must avoid the appearance of impropriety because such is an integral component of professional responsibility, *First American Carriers, Inc. v. Kroger Co.*, 302 Ark. 86, 787 S.W.2d 669 (1990).

In *First American Carriers, Inc.*, a law firm was disqualified even though no confidential information was obtained and the

contacts were minimal. In *American Insurance Association v. Kentucky Bar Association*, Ky., 917 S.W.2d 568 (1996), this Court stressed that the mere appearance of impropriety is just as egregious as any actual or real conflict. *Id.* at 573.

Although the appearance of impropriety formula is vague and leads to uncertain results, it nonetheless serves the useful function of stressing that disqualification properly may be imposed to protect the reasonable expectations of former and present clients. The impropriety standard also promotes the public's confidence in the integrity of the legal profession. For these reasons, courts still retain the appearance of impropriety standard as an independent basis of assessment.

For the foregoing reasons, we mandate that the circuit court enter an order disqualifying attorney Charles E. King in this matter.

STEPHENS, C.J., and COOPER, GRAVES, JOHNSTONE, LAMBERT and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion.

STUMBO, Justice, dissenting.

Reluctantly, I dissent. There is no allegation by Appellants that King obtained confidential information during his contact with them, nor is there any assertion that King's representation of the Kidds will, in any way, prejudice the Appellants. Without a clear showing of such prejudicial effect, I would not utilize the draconian measure of the issuance of a writ of mandamus.