UNIVERSITY OF LOUISVILLE; Allan Tasman, M.D.; Donald R. Kmetz, M.D.; and Thomas Lyons, Appellants,

v.

Honorable James M. SHAKE, Judge, Jefferson Circuit Court, Appellee,

and

Heddy Rubin–Teitel and Robert Teitel, Real Parties in Interest.

No. 99–SC–0039–MR.

Supreme Court of Kentucky.

Aug. 26, 1999.

Rehearing Denied Dec. 16, 1999.

Margaret E. Keane, Laurel S. Banks, Melissa S. Norman, Greenebaum Doll & McDonald, PLLC, Louisville, for Appellants.

James M. Shake, Judge, Jefferson Circuit Court, Louisville, for Appellee.

David Tachau, Dustin E. Meek, Tachau Maddox Hovious & Dickens, PLC, Louisville, for Real Parties in Interest.

STUMBO, Justice.

Appellants, University of Louisville, et al., moved for a writ of mandamus in an original action before the Kentucky Court of Appeals. The motion was denied without opinion, and Appellants now appeal as a matter of right. CR 76.36(7)(a).

The litigation underlying the instant controversy involves allegations of sexual and religious harassment in the workplace based on the alleged anti-Semitic actions of a tenured professor, Theodore Feldmann, towards Plaintiff/Real–Party–in–Interest Heddy Rubin–Teitel, a secretary in his department. In October of 1996, Ms. Teitel and her husband filed this suit alleging the Appellants and Feldmann conspired to create and maintain a discriminatory and threatening workplace environment at the university office where Teitel worked.

In May of 1997, Appellants notified plaintiffs' counsel by letter that, pursuant to *Shoney's Inc. v. Lewis,* Ky., 875 S.W.2d 514 (1994), Appellants were denying plaintiffs permission to interview or contact any present or past employee of the university outside the presence of university counsel. In December of 1997, the Teitels filed a motion asking the trial court to order Appellants to identify specific individuals whom they deemed off limits from *ex parte* contact. In January of 1998, the trial court denied the motion, stating "As per this Court's previous ruling, any employee who has been interviewed by the University counsel and who has relied upon his advice, would be covered by this prohibition."

On December 12, 1998, a few weeks before the scheduled trial in this action, David Tachau, attorney for the Plaintiffs/Real–Parties–in–Interest, attended a party in the home of his father. At the party, Tachau spoke briefly (approximately thirty seconds) with Minx Auerbach, a former chair of the University of Louisville's Board of Trustees. In fact, Auerbach served on the Board from 1992 to 1998, when her term expired, and the allegations of discrimination and harassment in the underlying litigation occurred during Auerbach's tenure on the board. According to Auerbach, prior to her conversation with Tachau, she was unaware that he was involved in a lawsuit against the university.

Auerbach claims that Tachau said to her, "Your name came up last week." When Auerbach asked how, Tachau replied, "I was at a meeting with Tom Lyons [an Appellant/Defendant herein] last week, and I asked him if any Board of Trustees member had asked questions about the 'Ted Feldmann' case."[1] Tachau then elaborated, "Tom Lyons said that Mrs. Auerbach had asked questions." At this time, Auerbach said, "I probably did; I always ask questions and ... they were probably glad to see me go because of my questions." Auerbach, unaware of the status of the case, then asked if it was still ongoing.

---

1. The "meeting" to which Tachau referred in his conversation with Auerbach was actually Lyons' deposition, during which Tachau had asked if Lyons recalled any Board member asking questions concerning the Feldman litigation, and Lyons had responded that Auerbach had asked questions.

Tachau said, "Yes, and it's a real mess for the University." Auerbach replied, "That's too bad." At some point in the conversation, Auerbach also said, "Tom Lyons is not one of my favorite people." Tachau's recollection of the conversation differs somewhat from Auerbach's,[2] but in order to resolve this ensuing controversy as quickly as possible, he has agreed to accept Auerbach's version of the conversation as true.

On December 29, 1998, Appellants sought to disqualify Tachau and his law firm from participating in the underlying lawsuit based on his conversation with Auerbach. After reviewing the affidavits of both Tachau and Auerbach, and after hearing argument from both parties, the trial judge (Appellee herein) denied the motion on January 4, 1999. The following day, Appellants filed a motion for intermediate relief and petition for mandamus with the Court of Appeals, requesting the trial judge be ordered to disqualify Tachau and his firm, and to seal any information wrongfully obtained as a result of the *ex parte* contact with Auerbach. The Court of Appeals denied the motion, and the University, et al., now appeal that decision as a matter of right.

Appellants strenuously argue that Tachau's actions not only violated the trial court's January 13, 1998 order prohibiting *ex parte* communication with certain university employees, but also constitute a blatant breach of SCR 3.130–4.2, which prohibits an attorney from communicating about the subject of a representation with a party the attorney knows to be represented by another lawyer in the matter, unless the attorney has the consent of the other attorney or is authorized by law to do so. *See Shoney's*, 875 S.W.2d at 515–16. Appellants argue that the only appropriate sanction for such behavior is disqualification, and that they will be irreparably harmed if this Court does not order

the trial court to disqualify Tachau and his firm from the case. *See id.* at 516–17.

The Teitels, on the other hand, argue that their attorney's conversation with Auerbach was entirely innocent and in no way unethical, and, in any event, that the conversation did not violate the trial court's January 1998 order, SCR 3.130–4.2, or *Shoney's*, because at the time of the conversation, Auerbach was a *former* employee of the university, not a current employee. Furthermore, the Teitels argue that even if Tachau's conduct was improper, because the university has failed to show any prejudice as a result of the conversation, it has failed to satisfy the requirements for the issuance of a writ of mandamus.

At the outset we note that we are not convinced Tachau's behavior is as deplorable as Appellants would have us believe. Although his conversation with Auerbach might have been a nefarious eleventh-hour attempt to elicit information crucial to the impending trial, it could just have easily have been the innocuous party chit-chat with his father's long-time friend that Tachau claims it was. The trial court made no finding on this issue, nor did it determine whether the conversation violated its January 1998 order or SCR 3.130–4.2. Because we are not in the business of making such findings of fact, and because we believe the issue of prejudice is determinative of the matter at hand, we decline to resolve the question of whether Tachau's behavior crossed any legal or ethical lines. Nevertheless, this case illustrates the need for caution and vigilance by participants in the justice system to avoid even inadvertent violation of orders and rules.

 Instead, we concentrate simply on the requirements for the issuance of a writ of mandamus, since the Court of Appeals' denial of such is the reason this case

---

**2.** Most notably, Tachau claims he informed Auerbach of his involvement in the case at the outset of the conversation, and that he specifically told Auerbach that her name came up during the deposition of Thomas Lyons.

has come before us. Mandamus is an extraordinary remedy, one which we do not issue lightly.

> To prevail on [a] Petition for Writ of Mandamus, it is incumbent upon [the movant] to establish that ... the lower court, although acting with jurisdiction, is about to act incorrectly and there is no adequate remedy by appeal and great injustice or irreparable injury would result.

*Bock v. Graves,* Ky., 804 S.W.2d 6, 9 (1991) (citing *Tipton v.. Commonwealth,* Ky.App., 770 S.W.2d 239 (1989)).

■ Here, Appellants have quite simply failed to show how they will be irreparably harmed by the trial court's refusal to disqualify attorney Tachau and his firm from this case or to suppress any information obtained as a result of Tachau's conversation with Auerbach. It seems, from the facts we have before us, that the information revealed during this brief conversation pertained to issues collateral to the primary subject of the litigation, and that Auerbach did not reveal any confidential or privileged information to plaintiffs' counsel. Furthermore, at the trial court hearing on this matter, plaintiffs agreed not to use at trial any information obtained from the conversation with Auerbach, and we trust the trial court will enforce this stipulation. If plaintiffs nevertheless manage to achieve some unfair use of this information at trial, Appellants can always raise the issue on appeal.

■ In addition to arguing that they have been or might be prejudiced by the information revealed to plaintiffs during the conversation, Appellants also argue that regardless of the degree of actual prejudice incurred, whenever an attorney engages in unethical (or in this case, questionable) conduct, disqualification of counsel and suppression of information is necessary to preserve "the integrity of the adversarial process" and to "prevent harm to the civil justice system." *Shoney's,* 875 S.W.2d at 517. We disagree. As we noted in *Shoney's,* "disqualification of a party's

counsel and suppression of information obtained by that counsel is a drastic remedy." *Id.* at 516. To mechanically resort to such an extreme remedy when not absolutely necessary to protect a party from substantial actual prejudice would surely do more harm than good to the adversarial process. Accordingly, the holding of *Shoney's* requires courts to "primarily assess the possibility of prejudice at trial that might result from the attorney's unethical act." *Id.*

In *Shoney's,* unlike the instant case, the evidence obtained by the attorney's violation of Rule 4.2 was not collateral, but rather, was "very important ... super important" to the plaintiff's case. *Id.* at 515. Thus, where the improperly obtained information was highly prejudicial to the appellants in *Shoney's,* we were willing to issue a writ ordering the trial court to disqualify counsel and suppress information. We are unwilling to do so here, however, where we can perceive no likely resultant prejudice.

Because Appellants have failed to convince us that they will suffer *any* injury, much less an irreparable one, absent the issuance of a writ of mandamus, we affirm the decision of the Court of Appeals to deny the requested writ.

LAMBERT, C.J.; and COOPER, KELLER, and WINTERSHEIMER, JJ., join this opinion.

JOHNSTONE, J., dissents by separate opinion, in which GRAVES, J., joins.

JOHNSTONE, Justice, dissenting.

I respectfully dissent. The majority opinion holds that the Court of Appeals correctly denied the appellants' writ of mandamus requesting that opposing counsel be disqualified for improper *ex parte* contacts. I disagree and would reverse the Court of Appeals.

The majority declines to address the issue of whether Tachau violated SCR 3.130–4.2 because the trial court made no

finding of fact on the issue. Rather, the majority disposes of this case on grounds that appellants have failed to show irreparable harm. While disingenuous, this tactic is necessary to avoid the clear dictates of *Shoney's, Inc. v. Lewis*, Ky., 875 S.W.2d 514 (1994), which mandates a granting of the writ in this case.

In *Shoney's*, based on the record, we made our own independent determination of the following factual and legal issues: (1) whether appellant's "managerial employees were represented parties for purposes of [SCR 3.130–4.2];" and (2) "whether [SCR 3.130–4.2] applies both before and after formal proceedings have begun." *Id.* at 515. After answering both of these questions in the affirmative, we held "that communication between Herr's counsel and Lee's managerial employees was improper." *Id.* at 516. Thus, under *Shoney's*, it is entirely appropriate for us to make the determination as to whether Tachau violated SCR 3.130–4.2. Moreover, independent of the *Shoney's* decision, there is a compelling reason for this Court to determine whether Tachau violated the rule.

SCR 3.130–4.2 is *our* rule. Who better than this Court to determine whether the rule has been violated? Thus, regardless of whether the trial court made a finding of fact as to whether the rule had been violated, I believe it is our obligation and our duty to make an independent determination of whether our rules have been violated. That is, I would hold that whether a Supreme Court Rule has been violated is subject to a *de novo* review by this Court. Further, based on the record, I would hold that Tachau's contact with Auerbach did violate SCR 3.130–4.2.

In the instant case, counsel for the appellants sent two (2) letters advising opposing counsel that they did not have permission or authority to contact or interview employees falling within the scope of the *Shoney's* decision. The second letter specifically enumerated "past or present employees." Further, the trial court entered an order prohibiting the plaintiffs from conducting any *ex parte* communications. In the order, the trial court stated "that any employee who has been interviewed by University counsel and who has relied upon his advice, would be covered by this prohibition." Minx Auerbach, a former Chair of the University's Board of Trustees, the University's sole governing body, was among those included by this prohibition on *ex parte* contact. Auerbach served on the Board of Trustees while the alleged abusive behavior occurred as well as during substantial portions of the litigation process. As a result, Auerbach was privy to among the most confidential and sensitive attorney-client discussions concerning the underlying action and related litigation.

Against this backdrop, Tachau approached Auerbach at a social function, scant weeks before the scheduled trial. Tachau had deposed Tom Lyons and John Shumaker, in their capacity as University officials, one week prior to this party. In the deposition he asked whether any Board of Trustees member had inquired about this case. Lyons named Auerbach as such a Board of Trustees member. One week after this deposition, at a party in his father's home, Tachau initiated a conversation with Auerbach regarding that deposition. Tachau never disclosed that he was involved in a lawsuit against the University. He told Auerbach that her name had come up in a "meeting" with Lyons, rather than at a deposition. He then began a discussion with Auerbach regarding the case and her involvement as a Board of Trustees member.

SCR 3.130–4.2, provides:

In representing a client, a lawyer *shall not* communicate about the subject matter of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

This rule is straightforward and simple to understand. An attorney who represents a party in real interest *shall not* communicate with a party represented by another attorney regarding the subject matter of the representation, absent permission. Counsel for appellants clearly put Tachau on notice that he was not to contact any present or former employee. This notice surely included a former Chair of the Board of Trustees. Further, the trial court issued an order prohibiting any *ex parte* contact with any employee who had been interviewed by University counsel and who had relied upon his advice.

Having determined that Tachau's actions were improper, the inquiry turns away from whether appellants can show actual prejudice. Rather, pursuant to *Shoney's*, the appropriate inquiry is whether there exists a *"possibility* of prejudice at trial that might result from the attorney's unethical act with any doubt to be resolved in favor of disqualification." *Id.*, quoting *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080 (S.D.N.Y.1989) (emphasis added). Upon review of the record, I conclude that the appellants met their burden of showing the possibility of prejudice from Tachau's improper actions.

Tachau knew that Auerbach had been the Chair of the Board of Trustees during a substantial portion of the litigation process and that she would be covered by the attorney-client privilege by virtue of her position. Tachau went fishing for information contrary to the trial court's order, as well as in violation of SCR 3.130–4.2. The harm done need not be measured in concrete terms of damage to this particular case. Rather, the harm is to the adversarial process.

"Despite the increased liberality of the Civil Rules and forms of discovery, the rules do not contemplate discovery of privileged information between attorney and client. While it is the duty of an attorney to represent his client zealously, it is also his duty to represent him within the bounds of law." Opinion KBA E–65. Tachau stepped outside the bounds of law when he consciously disregarded both the trial court and SCR 3.130–4.2. When the integrity of the adversarial process is at stake, disqualification is the only proper course of action.

Finally, *Lovell v. Winchester*, Ky., 941 S.W.2d 466 (1997), supports granting the writ in this case. *Lovell*, like the case at bar, was an appeal from a Court of Appeals' decision denying a petition for a writ of mandamus to compel the trial court to disqualify opposing counsel. *Id.* at 467. The appellants argued that the writ was appropriate because of an alleged conflict of interest. *Id.* In *Lovell*, we concluded that the issue of whether the appellants showed actual prejudice was *irrelevant* to the issue of whether the writ was appropriate:

> Although King argues that Appellants cannot demonstrate how his representation of Kidd would harm their case, we believe that the situation creates a perception of betrayal and disloyalty which cannot be condoned. To sanction this professional conduct merely on the claim that he recalls nothing of the prior contact impairs public confidence in the legal system. Further, there is the potential to prejudice clients in the employ of legal counsel. Maintaining public confidence in the legal system requires that preservation of client confidence should outweigh the interests of individual lawyers and individual clients in freely contracting with each other. Client confidence should prevail among these competing interests. Thus, we are of the opinion that granting the extraordinary relief requested by Appellants is consistent with the goals of KRE 503 and the policies underlying the Rules of Professional Conduct.

*Id.* at 467–68.

We then went on to hold that the showing of the mere appearance of impropriety was sufficient grounds to justify granting the extraordinary remedy of the writ. *Id.*

at 469. Tachau's improper contact with Auerbach clearly creates the appearance of impropriety. Justice Graves correctly stated the reason for the holding in *Lovell* when he declared, "the mere appearance of impropriety is just as egregious as any actual or real conflict." *Id.* at 469. The same rings true in the case at bar.

Therefore, I would reverse the Court of Appeals and remand with directions to grant the writ.

GRAVES, J., joins this dissent.