**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Lee,* **Slip Opinion No. 2016-Ohio-85.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-85

DISCIPLINARY COUNSEL *v.* LEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Lee,* Slip Opinion No. 2016-Ohio-85.]**

*Attorneys at law—Misconduct—Violations of the Rules of Professional Conduct and a Rule for the Government of the Bar—Indefinite suspension.*

(No. 2014-1744—Submitted May 5, 2015—Decided January 14, 2016.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2013-036.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Raymond Thomas Lee III of Dublin, Ohio, Attorney Registration No. 0040765, was admitted to the practice of law in Ohio in 1983. Lee's license to practice law has been suspended four times for his failure to register as an attorney and once for his failure to comply with the continuing legal education

("CLE") requirements of Gov.Bar R. X.[1]  Lee has failed to rectify the conditions underlying his CLE and fourth attorney-registration suspensions.  Thus, he has been suspended from the practice of law in Ohio continuously since December 17, 2010.[2]

{¶ 2} On June 10, 2013, a probable-cause panel of the Board of Commissioners on Grievances and Discipline[3] certified to the board a two-count complaint filed by relator, disciplinary counsel, against Lee.  The complaint alleged that Lee, who primarily practices federal employment law on behalf of the Federal Educators Association ("FEA") and its members,[4] had neglected the Kentucky licensing matter of a union member.  The complaint further alleged that Lee had failed to reasonably communicate with that client; engaged in dishonesty, fraud, deceit, or misrepresentation; practiced law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction; and failed to cooperate in the ensuing investigation.

{¶ 3} A panel of the board conducted a hearing and issued a report in which it rejected Lee's claim that federal labor law rendered him immune from state

[1] *See In re Attorney Registration Suspension of Lee*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671, and *In re Reinstatement of Lee*, 110 Ohio St.3d 1480, 2006-Ohio-4761, 854 N.E.2d 207 (suspended from December 2, 2005, to July 26, 2006, for his failure to register for the 2005-2007 biennium); *In re Attorney Registration Suspension of Lee*, 116 Ohio St.3d 1420, 2007-Ohio-6463, 877 N.E.2d 305, and *In re Reinstatement of Lee*, 118 Ohio St.3d 1523, 2008-Ohio-3532, 890 N.E.2d 331 (suspended from December 3, 2007, to April 29, 2008, for his failure to register for the 2007-2009 biennium); *In re Attorney Registration Suspension of Lee*, 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.2d 1256, and *In re Reinstatement of Lee*, 126 Ohio St.3d 1603, 2010-Ohio-4979, 935 N.E.2d 48 (suspended from November 3 to December 2, 2009, for his failure to register for the 2009-2011 biennium); *In re Attorney Registration Suspension of Lee*, 130 Ohio St.3d 1441, 2011-Ohio-5890, 957 N.E.2d 302 (effective November 15, 2011); *In re Continuing Legal Education Suspension of Lee*, 127 Ohio St.3d 1467, 2010-Ohio-6302, 938 N.E.2d 368 (effective December 17, 2010).

[2] Lee is also licensed to practice law in the state of California, but at the May 5, 2015 oral argument of this case, he stated that he had not reported his Ohio suspensions to the California bar.

[3] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct.  *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

[4] The FEA is a union that represents educators working in the Department of Defense school system who are charged with educating the children of military members.  Federal Education Association, *Inside FEA*, www.feaonline.org/inside/ (accessed Dec. 9, 2015); Department of Defense Education Activity, *About DoDEA*, http://www.dodea.edu/aboutDoDEA/index.cfm (accessed Dec. 9, 2015).

attorney disciplinary proceedings in this case. The panel also found that based on Lee's conduct, an implied attorney-client relationship arose between Lee and the union member and that relator had proven each of the alleged ethical violations by clear and convincing evidence. Based on those violations, the panel recommended that Lee be indefinitely suspended from the practice of law in Ohio.

{¶ 4} The board adopted the panel report with minor modifications and agreed that an indefinite suspension is the appropriate sanction for Lee's misconduct. Lee objects to the board's findings that (1) he is not immune from discipline, (2) an attorney-client relationship arose between him and the union member, and (3) he failed to cooperate in relator's investigation. We overrule Lee's objections, adopt the board's findings of fact and misconduct, and indefinitely suspend Lee from the practice of law in Ohio.

### Count I:  The Buhl Matter

{¶ 5} At all times relevant herein, Lee was on a regular retainer with the FEA and received a fixed monthly fee to handle disciplinary matters involving members of the FEA's collective-bargaining unit; more than 50 percent of those matters involved teacher discipline. His primary contact at the FEA was his ex-wife, Dorothy Lee ("Dorothy"), who served as general counsel for the FEA Stateside Region.

{¶ 6} In 2007, Patricia Lee-Buhl ("Buhl"), a teacher and member of the FEA, was employed by the Fort Knox Community Schools[5] ("the school district") in Fort Knox, Kentucky. During the summer of 2007, Buhl's husband, who served in the United States Army, was transferred from Fort Knox to the Marshall Islands, and the school district granted Buhl a 90-day leave of absence. In October 2007, Buhl resigned her teaching position at the school district.

---

[5] The Fort Knox Community Schools district is operated by the United States Department of Defense. Department of Defense Education Activity, *Fort Knox Community Schools*, http://www.am.dodea.edu/knox/fkcsco/ (accessed Dec. 9, 2015).

{¶ 7} Buhl contacted Lee and Dorothy in early November 2007 to inquire about the possibility of filing a grievance in connection with an investigation by the school district that had been pending against her at the time of her resignation. Lee responded and advised Buhl that her resignation had weakened the position of the FEA because she was no longer a member of the collective-bargaining unit and that the school district could therefore challenge the union's standing to bring an action on her behalf. The record indicates that Buhl never filed a grievance about the matter.

{¶ 8} On November 28, 2007, the Kentucky Education Professional Standards Board ("the state licensing board")—the state agency responsible for issuing teaching certificates for all public-school teachers in Kentucky, Ky.Rev.Stat.Ann. 161.030(1)—sent Buhl a letter (at her new address in the Marshall Islands) to inform her that she had been accused of teacher misconduct and to request her response to the allegations.

{¶ 9} After receiving the state licensing board's letter, Buhl prepared a draft reply to the allegations and e-mailed that draft to Lee and several FEA staff members for their review. Lee reviewed her draft, provided comments, and recommended that she submit the revised draft as the reply. He also indicated that he and Dorothy were preparing a "lawyer supplement" to be submitted after Buhl's reply. Buhl made Lee's proposed changes and sent the letter back to him so that he could submit it on her behalf. Lee faxed Buhl's letter to the state licensing board, but he did not submit any supplemental materials.

{¶ 10} In March 2008, the state licensing board notified Buhl and Lee that it would hold a hearing on the disciplinary complaint against Buhl. The following month, Buhl e-mailed Lee and other FEA staff members seeking advice, and Lee replied that no action should be taken until the state licensing board assigned her case to a judge and set a prehearing conference date. He further stated, "We will naturally review the charges and take whatever action is appropriate based on the

charges brought, if any." Although Buhl inquired about the status of the complaint in October 2008 and June 2009, neither Dorothy nor Lee responded to her inquiries.

{¶ 11} In March 2010, attorney Courtney Baxter sent a letter to Buhl at her former address stating that she would be prosecuting the complaint before the state licensing board and advising Buhl that Lee had not responded to any of her telephone calls. Although the state licensing board had previously sent correspondence to Buhl in the Marshall Islands, Baxter's letter was sent to Buhl's former Kentucky address. Apparently unaware of Baxter's letter, Dorothy responded to an April 2010 e-mail from Buhl, telling her that she should take no action and that there was no reason to believe the complaint was still under review.

{¶ 12} Baxter filed the formal complaint against Buhl with the state licensing board on February 11, 2011. After several attempts to serve the wrong attorney and to serve Buhl at her former address, Baxter finally reached Lee, who told her that he had not heard from Buhl recently and that he was not sure whether he "still" represented her. Lee told Baxter that he would make an inquiry and be in touch. After Baxter did not hear again from Lee, she moved for a default judgment on March 7, 2011.

{¶ 13} Six days after Baxter moved for default, Buhl e-mailed Lee and Dorothy to inform them that she had received a copy of the prehearing-conference order, which had been forwarded to her, and to request that they contact the state licensing board to clear up any misunderstanding and avoid defaulting. Just two days later—on March 15, 2011—the hearing officer issued a recommended order of default. That afternoon, Lee e-mailed Baxter, stating that Buhl had authorized him to represent her but that he would need to move for admission to the Kentucky bar pro hac vice. He forwarded that e-mail to Buhl and promised to file a notice of appearance and request to be admitted pro hac vice later that day.

{¶ 14} Lee and Baxter exchanged e-mails the next day, agreeing to seek a new prehearing-conference date and to begin settlement talks. Lee then sent a letter

to the hearing officer requesting a date for a new prehearing conference and stating his intent to move for admission pro hac vice. But Baxter soon informed him that she had received a court order granting her motion for default judgment—and permanently revoking Buhl's Kentucky teaching certificate—and recommended that he move to set the default judgment aside. Later that afternoon, Lee sent Buhl a copy of the letter he had sent to the hearing officer promising to get "something else" filed on the following Monday.

{¶ 15} Notwithstanding Lee's multiple representations and promises to Buhl, Baxter, and the hearing officer that he would take action on Buhl's behalf, he never filed a notice of appearance, never moved for admission pro hac vice, and never moved to set aside the default judgment. He also never responded to Buhl's subsequent inquiries about the status of her case or to her requests for assistance.

{¶ 16} On November 2, 2011, Buhl received a notice that Pennsylvania sought to revoke her teaching certification in that state based on the Kentucky order. Again, Lee failed to respond to Buhl's inquiries, and although he told her new attorney that he "hope[d] to devote tomorrow [i.e., December 17, 2011] to this matter," he never provided Buhl's file to the new attorney. Despite Lee's inaction, Buhl's new counsel negotiated a settlement that vacated the revocation of her Kentucky teaching certificate and, instead, imposed a two-year suspension retroactive to May 16, 2011.

{¶ 17} At his disciplinary hearing, Lee testified that he was not a Kentucky attorney, did not know how to get admitted pro hac vice or how to vacate a default judgment, had no experience with teacher-licensing issues, and had more work than he could handle at the time of the default judgment. He also admitted that he never shared any of these facts with Buhl.

{¶ 18} The board found that Lee abandoned Buhl and her legal matter, failed to act with reasonable diligence or promptness, failed to keep her informed, ignored reasonable requests for information, and failed to turn over her file when

she retained new counsel. The board also found that Lee's inaction was compounded by his failure to tell Buhl that he could not represent her while simultaneously allowing her to believe that he was handling her matter. Consequently, the board found that Lee violated the following Kentucky Rules of Professional Conduct:[6] S.C.R. 3.130-1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.16(d) (requiring a lawyer to take steps to surrender papers and property to which the client is entitled upon termination of representation), 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

**Federal Labor Law Does Not Render Lee Immune from Discipline in Ohio**

{¶ 19} The first of two defenses that Lee raised below is that federal labor law grants him immunity from all federal- and state-law claims arising from his representation of the FEA.

{¶ 20} The board found that Lee's claim of immunity was predicated on a body of federal law that renders an attorney who represents a union immune from tort-liability claims arising from that representation. *See Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 248-249, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) (holding that Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. 185(a), provides that when a private-sector union is liable for damages for

---

[6] Because Lee's conduct involved a matter pending before the Kentucky Education Professional Standards Board, the choice-of-law provision of Ohio Prof.Cond.R. 8.5 makes it clear that Kentucky law governs the relationship between Lee and Buhl. *See* Prof.Cond.R. 8.5(b)(1) (providing that for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits apply unless the rules of the tribunal provide otherwise). The Kentucky rules at issue here are virtually identical to the corresponding Ohio Rules of Professional Conduct.

violation of a collective-bargaining contract, its officers, members, and agents cannot be held personally liable for those damages); *Peterson v. Kennedy*, 771 F.2d 1244, 1259 (9th Cir.1985) (holding that outside counsel retained by a private-sector union is not subject to individual liability for acts performed on behalf of the union in the collective-bargaining process).

**{¶ 21}** The board found, however, that "[d]isciplinary actions fall within that inherent exclusive power of the Supreme Court of Ohio to admit, disbar, or otherwise discipline attorneys admitted to practice law in the State of Ohio." *See Mahoning Cty. Bar Assn. v. Franko*, 168 Ohio St. 17, 151 N.E.2d 17 (1958), paragraph three of the syllabus. *See also* Ohio Constitution, Article IV, Section 2(B)(1)(g) (granting this court original jurisdiction over "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law"). And because the purpose of this disciplinary action against Lee is to protect the public and to ensure that members of the Ohio bar are "competent to practice a profession imbued with the public trust," *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 178, 707 N.E.2d 853 (1999)—rather than to bring a tort claim to further Buhl's private interests—the board concluded that the federal statutes and cases cited by Lee do not confer immunity or offer a defense in an attorney-discipline matter before this court.

**{¶ 22}** Lee objects to this finding, arguing that this disciplinary action "is a state law proceeding seeking to adjudicate the quality of representation provided by a Federal sector union" that involves an alleged violation of federal labor law. He also contends that because Buhl was a member of a collective-bargaining unit working for a federal employer (as opposed to a private employer), Title VII of the Civil Service Reform Act ("CSRA"), 5 U.S.C. 7101 et seq., affords him even greater protection than is conferred by the LMRA, *Atkinson,* and its progeny on persons acting on behalf of private-sector unions. He asserts that his actions were not taken on behalf of Buhl but on behalf of the federal-sector union, and he

therefore posits that the CSRA preempts all state-law causes of action arising out of that representation and renders him immune from this disciplinary proceeding.

{¶ 23} However, the conduct at issue here occurred neither in the context of an adverse personnel action taken against a federal employee nor during the review of such an action. Rather, the conduct occurred in a separate state action regarding a former federal-sector union member's Kentucky teaching license. Thus, this disciplinary proceeding is not intended to vindicate the individual employment rights of a federal-sector employee or the collective-bargaining rights of a federal-sector union. Rather, it is intended to further the state's independent and compelling interest in regulating the conduct of persons who are licensed to practice law within its borders. *See Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792-793, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) (recognizing that "the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests, they have broad power to establish standards for licensing practitioners and regulating the practice of professions").

{¶ 24} Lee has not identified any provision in the CSRA or its legislative history manifesting a congressional intent to preempt a state's inherent interest in protecting the public from attorneys who are unethical, unscrupulous, or no longer competent to practice law. *See Retail Clerks Internatl. Assn., Local 1625 v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963) (noting that congressional purpose is the "ultimate touchstone" in determining whether a federal regulatory scheme will preempt or displace state regulation in the same field). Nor has he shown how state regulation of attorney conduct under the circumstances of this case will undermine the CSRA's comprehensive system of labor regulation. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (recognizing that a federal statute may implicitly preempt state law when the scope of the statute indicates that Congress intended federal law to occupy

the field exclusively or when the state law is in actual conflict with federal law). Therefore, we reject Lee's defense that federal labor law preempts our professional conduct rules and renders him immune from these disciplinary proceedings.

**An Attorney-Client Relationship Arose Between Lee and Buhl**

**{¶ 25}** In his second objection, Lee urges us to reject the board's finding that an attorney-client relationship arose between him and Buhl because he did not give his "clear consent" to represent her individually in the context of her state licensing matter.

**{¶ 26}** The board rejected Lee's claim that the clear consent of both parties was required to create an attorney-client relationship. Instead, the board found that under Kentucky law,[7] an implied attorney-client relationship arose because Buhl had a reasonable expectation or belief, based upon Lee's conduct, that he had undertaken her representation. *See Pete v. Anderson*, 413 S.W.3d 291, 296 (Ky.2013) ("[A]n attorney-client relationship may be created as a result of a party's 'reasonable belief or expectation,' based on the attorney's conduct, that the attorney has endeavored to undertake representation"), quoting *Lovell v. Winchester*, 941 S.W.2d 466, 468 (Ky.1997), *overruled on other grounds by Marcum v. Scorsone*, 457 S.W.3d 710 (Ky.2015).

**{¶ 27}** It is evident from Buhl's testimony that she believed that Lee was representing her in her state licensing matter, and Lee's interactions with her and with others made this belief reasonable. Indeed, the record shows that Lee (1) gave Buhl advice regarding the state licensing board's investigation on numerous occasions, (2) suggested that he had drafted and would submit a "lawyer supplement" to her written rebuttal of the initial inquiry, and (3) made various

---

[7] The choice-of-law provision of Ohio Prof.Cond.R. 8.5 makes it clear that Kentucky law governs the relationship between Lee and Buhl. *See* Prof.Cond.R. 8.5(b)(1) (providing that for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits apply unless the rules of the tribunal provide otherwise). The licensing matter at issue here was pending before the Kentucky Education Professional Standards Board.

affirmative representations to Buhl, the hearing officer, and opposing counsel to the effect that he represented Buhl, would enter an appearance in the action, would move to be admitted pro hac vice, and would "get something else in [the following] Monday."

{¶ 28} Despite having made these representations, Lee failed to do anything on Buhl's behalf. Instead, he stood by while the state of Kentucky revoked her teaching certificate, he failed to advise her that a default judgment had been entered against her, and he failed to take any action to have that judgment set aside. He also ignored multiple inquiries from Buhl regarding the status of her case and failed to comply with requests for her file once she obtained new counsel.

{¶ 29} Even if Lee intended his representation of Buhl to be limited to certain matters, the Kentucky Rules of Professional Conduct place the burden of defining the scope of the representation squarely on the attorney. S.C.R. 3-130-1.2(c) provides, "A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent." Similarly, Comment 4 to S.C.R. 3.130-1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client) cautions that when the lawyer has handled matters for a client on an ongoing basis, the client may assume that the lawyer's representation will continue. Comment 4 specifies that "[d]oubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so." But Lee admitted that he made no effort to expressly limit the scope of his representation or to make it clear to Buhl that he represented only the union.

{¶ 30} Because Buhl believed that Lee was representing her in her state licensing matter and Lee's conduct made that belief reasonable, we conclude that an attorney-client relationship arose, at least by implication. We therefore overrule

Lee's objections and adopt the board's findings of fact and conclusions of law in this regard.

**{¶ 31}** Having overruled both of Lee's objections with respect to the Buhl matter, we conclude that the board's findings of fact and of misconduct with regard to Count I are supported by clear and convincing evidence, and we adopt them as our own.

## Count II:  Failure to Cooperate

**{¶ 32}** The board found that Lee failed to respond to relator's first two letters of inquiry and failed to appear for two scheduled depositions, even though relator served him with subpoenas for both depositions by taping them to the front door of his home.  After relator e-mailed Lee to advise him of the numerous attempts that had been made to reach him and to inform him that a formal disciplinary complaint was being prepared for filing, Lee e-mailed relator claiming that he had submitted a response to the first letter of inquiry and denying that he had ever represented Buhl.

**{¶ 33}** Although relator asked Lee to send a copy of the response that he claimed to have submitted, he failed to do so.  Lee also denied having received relator's second letter of inquiry and the two subpoenas for deposition, and he claimed that he had responded to all of the communications that he had received. In May 2013, relator provided Lee with a copy of the draft complaint.  Lee responded to the draft complaint and all of the letters of inquiry—approximately one year after relator's first inquiry and six months after he first communicated with relator—but failed to address one issue raised by relator.

**{¶ 34}** On these facts, the board found that Lee violated Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation) and Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation).

{¶ 35} Lee objects and contends that there is insufficient evidence to support these findings. Our review of the record, however, shows that there is ample evidence to support the board's finding that Lee failed to cooperate in relator's investigation. We therefore overrule Lee's objections and adopt the board's findings with regard to Count II as our own.

**Sanction**

{¶ 36} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).[8]

{¶ 37} In this case, the board found that the following aggravating factors are present: (1) a dishonest or selfish motive, (2) a pattern of misconduct, (3) multiple offenses, (4) a lack of cooperation in the disciplinary process, (5) a refusal to acknowledge the wrongful nature of the conduct, and (6) the vulnerability of and resulting harm to Buhl, who testified that the matter took a toll on her health, her family, and her children, caused her to fear for her husband's military career, and caused her to fear returning to the classroom. *See* BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (e), (g), and (h). The only applicable mitigating factors that the board found are the absence of prior discipline and two letters attesting to Lee's character and reputation apart from this misconduct. *See* BCGD Proc.Reg. 10(B)(2)(a) and (e).

{¶ 38} Relator argued that the appropriate sanction for Lee's misconduct is an indefinite suspension. Noting that we frequently impose indefinite suspensions on attorneys who neglect client matters and fail to cooperate in the ensuing disciplinary investigations, the board agreed that the sanction is appropriate in this

---

[8] Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

case. *See, e.g.*, *Disciplinary Counsel v. Mathewson*, 113 Ohio St.3d 365, 2007-Ohio-2076, 865 N.E.2d 891 (indefinitely suspending an attorney who neglected a client matter, engaged in conduct prejudicial to the administration of justice when he failed to ensure documents were prepared and filed in three criminal appeals, and failed to cooperate in the resulting disciplinary investigation); *Disciplinary Counsel v. Meade*, 127 Ohio St.3d 393, 2010-Ohio-6209, 939 N.E.2d 1250 (indefinitely suspending an attorney who neglected a client's appeal of a deportation ruling and failed to cooperate in multiple disciplinary investigations); *Disciplinary Counsel v. Bogdanski*, 135 Ohio St.3d 235, 2013-Ohio-398, 985 N.E.2d 1251 (indefinitely suspending an attorney who abandoned client matters, engaged in acts of dishonesty, failed to acknowledge the wrongful nature of her conduct, and failed to cooperate in the disciplinary investigation).

{¶ 39} In light of Lee's conduct, the significant aggravating factors present, and the sanctions we have imposed for comparable misconduct, we find that an indefinite suspension is warranted.

{¶ 40} Accordingly, Raymond Thomas Lee III is indefinitely suspended from the practice of law in Ohio. Costs are taxed to Lee.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

—————————

Scott J. Drexel, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Raymond Thomas Lee III, pro se.

—————————