**RIDGEWAY NURSING & REHABILITATION FACILITY, LLC, D/B/A Hilltop Nursing and Rehabilitation Facility, and Provider Management and Development Corporation, Appellants**

v.

**Honorable William E. LANE, Judge, Bath Circuit Court, Division I, Appellee**

and

**Stella Collins, Executrix of the Estate of Roger Collins, Real Party In Interest.**

No. 2013–SC–000219–MR.

Supreme Court of Kentucky.

Dec. 19, 2013.

Lawrence E. Forgy, Jr., John Lawrence Forgy, Counsel for Appellants.

William Evans Lane, Frenchburg, for Appellee.

Robert Earl Salyer, Richard Eric Circeo, Corey Tomas Fannin, Counsel for Real Party In Interest.

Opinion of the Court by Chief Justice MINTON.

In an original action filed in the Court of Appeals, Ridgeway Nursing & Rehabilitation Facility sought a writ of mandamus requiring the dismissal of the claims brought against it or, alternatively, the disqualification of opposing counsel, Wilkes & McHugh. As grounds for the remedy it sought, Ridgeway alleges that an investigator working for Wilkes & McHugh contacted Ridgeway's employees in violation of Kentucky Rules of Professional Conduct 4.2. The Court of Appeals declined to issue a writ, noting that Ridgeway did not meet the prerequisites for issuance of a writ because it had an adequate remedy by appeal or otherwise. Because we similarly find that a writ is not available to Ridgeway in this circumstance, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY.

This litigation stems from the death of Roger Collins following an inpatient stay

at Ridgeway Nursing Home & Rehabilitation Facility.[1] Collins came to Ridgeway for post-operative rehabilitation and was essentially wheelchair bound during his stay. About a month before leaving Ridgeway, Collins fell out of his wheelchair and injured his neck. He fell face-first onto the floor and was treated on-site after another resident saw him on the floor and called for help. One licensed practical nurse and four nurses' aides treated Collins by helping him back into his wheelchair, cleaning the abrasion on his nose, and then performing regular neurological checks even though he did not complain of any pain and had movement in all of his extremities. When Collins began to complain of neck pain, he was transported to a hospital where he was diagnosed with two fractured vertebrae in his neck.

Collins was treated with a *halo*—a metal brace placed around the head and affixed to the skull with screws to immobilize the head and neck. Upon release from the hospital, Collins returned to Ridgeway to recover. He stayed there about another month. During this time, the sites where the halo was affixed to Collins's skull became infected, leading to a brain infection and multiple brain surgeries.

Collins died a month after leaving Ridgeway. And following his death, Collins's wife, on behalf of his estate, brought the underlying tort action against Ridgeway alleging wrongful death and nursing home neglect, attributing Collins's death to the fall and injuries he sustained as a resident of Ridgeway.

After extensive pretrial discovery by both sides, Ridgeway moved the trial court to dismiss Collins's complaint or, in the alternative, to disqualify Wilkes & McHugh, the law firm representing Collins. This motion stemmed from contacts made by Gary Carter, an investigator for Wilkes 85 McHugh, with employees of Ridgeway allegedly in violation of Kentucky Rules of Professional Conduct Rule 4.2.[2] Carter made contact with two employees before the filing of Ridgeway's motion and with a third employee during the pendency to this writ action.

First, Carter approached Carol Hughes, the licensed practical nurse that treated Collins immediately following his fall at Ridgeway. The affidavits of Hughes and her husband aver that the interaction with Carter lasted twenty-five to thirty minutes during which time Carter asked numerous questions about other employees and whether they were still employed by Ridgeway. Later, Carter contacted Lindsey Copher, a dietary aide employed at Ridgeway. Again, Copher's affidavit shows that she informed Carter that she was still employed by Ridgeway, which prompted Carter to inquire regarding the employment status of other Ridgeway employees.

Carter's deposition testimony, however, paints a slightly different picture. Carter testified that his purpose in contacting Hughes and Copher was to determine if they were still employed by Ridgeway, thereby determining if he was permitted to engage them in a substantive interview. After finding out that they were still em-

1. Collins was in fact a resident of Hilltop Nursing and Rehabilitation Facility, an assumed name of Ridgeway Nursing and Rehabilitation Facility. To avoid confusion, we will refer to both entities as Ridgeway throughout this opinion.

2. SCR 3.130–4.2 provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

ployed by Ridgeway, Carter testified he informed them that he could not speak to them and terminated the conversations.

Lastly, we acknowledge and grant Ridgeway's motion to supplement the record pertaining to another allegedly impermissible contact made by Carter. The supplemental information supplied by Ridgeway consists of an affidavit of Jessica Thompson, the Director of Social Services and Admissions for Ridgeway, regarding the contact she had with Carter. Thompson avers that Carter arrived at her home unannounced as part of an ongoing investigation regarding Ridgeway. Thompson directed Carter to leave upon discovering the purpose of his visit, and Carter complied without having the opportunity to ask Thompson any questions.

In response to Ridgeway's motion to dismiss or disqualify, the trial court denied the motion, finding that there is "no known negative result from [the] contact [ ] that would justify the serious remedies sought." The trial court further found the argument that prejudice would arise in the future to be "speculative" but announced that "the Court is willing to bar any evidence that comes to light from this contact as the remedy in this matter."

Following this adverse ruling, Ridgeway filed a writ petition in the Court of Appeals. In denying Ridgeway's petition, the Court of Appeals found that an adequate remedy existed outside the issuance of a writ and further found the claimed injury to be too speculative to support a writ. This appeal followed. We affirm.

## II. ANALYSIS.

The issuance of a writ of mandamus is an extraordinary remedy.[3] Courts are disinclined to issue writs because the nature of writ proceedings "necessitate an abbreviated record which magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants."[4] As a result of this Court's cautious approach to writ proceedings, we have adopted, and stringently applied, a strict set of requirements for issuing a writ.[5]

Writs are "divided into two classes, which are distinguished by whether the lower court allegedly is (1) acting without jurisdiction (which includes 'beyond its jurisdiction') or (2) acting erroneously within its jurisdiction."[6] Because Ridgeway does not challenge the trial court's jurisdiction in any regard, we are not now concerned with the first class of cases.

Under the second class of writ cases, a writ "*may* be granted upon a showing ... that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted."[7] This Court has consistently recognized an exception to the irreparable harm require-

---

3. *See, e.g., Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky.1961).

4. *Interactive Media Entm't and Gaming Ass'n v. Wingate*, 320 S.W.3d 692, 695 (Ky.2010); *see also Cox v. Braden*, 266 S.W.3d 792, 795 (Ky.2008) ("[T]he specter of injustice always hovers over writ proceedings.").

5. *See Hoskins v. Maricle*, 150 S.W.3d 1 (Ky. 2004) (holding that the older, stricter stan-

dard applied in *Bender*, 343 S.W.2d 799, and *Chamblee v. Rose*, 249 S.W.2d 775 (Ky.1952), should govern writ proceedings).

6. *Newell Enterprises, Inc. v. Bowling*, 158 S.W.3d 750, 754 (Ky.2005) (quoting *Bender*, 343 S.W.2d at 800) (internal quotation marks omitted).

7. *Hoskins*, 150 S.W.3d at 10.

ment in "certain special cases." [8] In these special cases, a writ may issue "in the absence of a showing of specific great and irreparable injury ... provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration." [9] Even when these requirements are met, the issuance of a writ is not mandatory; instead, "whether to grant the writ is in the sound discretion of the Court." [10]

As with other decisions that are within the discretion of the court, the decision of the Court of Appeals regarding the issuance of a writ is reviewed for an abuse of discretion. [11] Questions of law, however, will be reviewed de novo. [12] "And if the alleged error lies in findings of fact of the Court of Appeals, *e.g.* the finding regarding irreparable harm, then we review for clear error under CR 52.01." [13] Because the decision of the Court of Appeals only held that Ridgeway had an adequate remedy by appeal or otherwise, a question of law, our review is de novo. [14]

No adequate remedy by appeal or otherwise means that the injury to be suffered by Ridgeway "could not therefore be rectified in subsequent proceedings in the case." [15] In order for a writ to issue, the

lack of an adequate remedy by appeal or otherwise is an absolute prerequisite, regardless of whether the writ is sought by alleging irreparable harm or invoking the "certain special circumstances" exception. [16] Here, Ridgeway argues that no remedy other than the issuance of a writ will rectify the harm it suffered because the employees that were improperly contacted by Carter cannot recall every detail of the conversations they had with Carter. As such, Ridgeway argues an appeal would be futile because it will be unable to cite anywhere in the record that clearly contains prejudicial evidence resulting from the alleged improper conduct. We cannot agree with Ridgeway that such a situation obviates the availability of the remedies outside of a writ. Instead, we agree with the Court of Appeals that Ridgeway is presented with sufficient viable options of redress for the admission of unfairly and unethically obtained evidence.

Ridgeway has at least two viable options for redress. First, the trial court has already expressed its position regarding the admission of evidence obtained in contravention of Rule 4.2. The trial court stated in no uncertain terms that it will suppress any evidence resulting from unethical contacts. Second, if the trial court falters in excluding unethically obtained evidence

---

**8.** *See Bender,* 343 S.W.2d at 801.

**9.** *Id.*

**10.** *Appalachian Reg'l Healthcare, Inc. v. Coleman,* 239 S.W.3d 49, 53 (Ky.2007).

**11.** *Newell Enterprises, Inc.,* 158 S.W.3d at 754.

**12.** *Id.*

**13.** *Id.* at 754–55.

**14.** *Id.* at 755. ("[T]he existence of a remedy by appeal, adequate or not, is a question of law....")

**15.** *Bender,* 343 S.W.2d at 802.

**16.** *Id.* at 801 ("Our cases involving controversies in this second class ... have consistently (apparently without exception) required the petitioner to pass the first test; i.e. he must show he has no adequate remedy by appeal or otherwise."); *Independent Order of Foresters v. Chauvin,* 175 S.W.3d 610, 617 (Ky.2005) ("As discussed above, [petitioner] has an adequate remedy by appeal, thus it cannot claim the protection of the 'certain special cases' exception.").

and maintaining a fair and ethical atmosphere throughout trial, the aggrieved party will have the benefit of the appellate process to address all grievances.[17] Mindful of these remedies available to Ridgeway in the absence of a writ, we find that Ridgeway has an adequate remedy by appeal or otherwise. So, a writ of mandamus is not available to Ridgeway.

In addition to failing to show the lack of an adequate remedy by appeal or otherwise, Ridgeway has also failed to show that it would sustain any injury, much less irreparable injury, in the absence of a writ of mandamus. Similar to its argument that it has no adequate remedy outside of a writ, Ridgeway argues that because the employees that spoke with Carter do not recall the exact details of their conversations, it is inherently and irreparably harmed because lay persons, when not accompanied by counsel, may not understand the legal significance of what they say to an investigator. The trial court and Court of Appeals found this argument to be too speculative, and we must agree.

We find our decision in *University of Louisville v. Shake*[18] to be instructive in this instance. In *Shake*, an attorney representing a plaintiff in an employment discrimination suit against the University of Louisville encountered a former chair of the university's Board of Directors.[19] The former chair served on the Board during the alleged discriminatory incident and during the pendency of the litigation.[20] During the interaction between the attorney and the Board member, the case was only discussed briefly and in a general manner.[21] Because the *Shake* court found the brief encounter only pertained to matters collateral to the underlying case and the plaintiff agreed not to use any information obtained from the interaction at trial, the court found that there was no injury to the university and declined to issue a writ disqualifying the attorney.[22]

Here, Ridgeway can only provide evidence that the employees contacted by Carter disclosed, at most, information regarding the employment status of Ridgeway employees. No evidence was presented that these interactions involved any discussion of the merits of Collins's case or the disclosure of any confidential or privileged information. Similar to the *Shake* case, the only information disclosed during the alleged improper contacts was collateral in nature and, thus, does not create an injury sufficient to warrant a writ.

Ridgeway also argues that regardless of the severity of the actual injury it suffered, this instance is one in which the "certain special cases" exception should be invoked. Ridgeway takes the position that any violation of Rule 4.2 requires disqualification of the infringing attorney "with any doubt [of prejudice] to be resolved in favor of disqualification."[23] Unfortunately for Ridgeway, however, our case law is clear that the certain-special-cases exception only supplants the requirement that a petitioner prove irreparable harm in the absence of a writ, not the requirement that

---

17. *See University of Louisville v. Shake*, 5 S.W.3d 107, 110 (Ky.1999) ("If plaintiffs nevertheless manage to achieve some unfair use of this information at trial, appellants can always raise the issue on appeal.").

18. 5 S.W.3d 107 (Ky.1999).

19. *Id.* at 108.

20. *Id.*

21. *Id.* at 108–09.

22. *Id.* at 110.

23. *Shoney's, Inc. v. Lewis*, 875 S.W.2d 514, 516 (Ky.1994).

there be no adequate remedy by appeal or otherwise.[24] Because we have decided that Ridgeway has an adequate remedy by appeal or otherwise, Ridgeway cannot avail itself of the certain-special-cases exception.

Even if the certain-special-cases exception were available to Ridgeway, we have noted the "disqualification of a party's counsel ... is a drastic remedy[,]" which we are decidedly disinclined to grant.[25] We have shied away from perfunctorily ordering disqualification upon allegations of Rule 4.2 violations because applying such a remedy when it is "not absolutely necessary to protect a party from substantial *actual* prejudice would surely do more harm than good to the adversarial process." [26] As a result of our reluctance to institute a rule requiring knee-jerk disqualification for Rule 4.2 violations, "*Shoney's* requires courts to primarily assess the possibility of prejudice at trial that might result from the attorney's unethical act." [27]

In applying this test, this Court has been willing to issue a writ mandating attorney disqualification "where the improperly obtained information was highly prejudicial to the [petitioner]." [28] Conversely, "[w]e are unwilling to do so ... where we can perceive no likely resultant prejudice." [29] Akin to *Shake,* we find no immediate prejudice and perceive the likelihood of future prejudice to be mere speculation. As a result, the lack of prejudice coupled with the trial court's intent to suppress any unethically obtained evidence yields a conclusion that Wilkes 8s McHugh need not be disqualified at this juncture, even under the certain-special-cases exception.

Ridgeway has also pleaded that if these alleged violations of Rule 4.2 go unpunished here, Wilkes & McHugh will escape without any punishment for their allegedly unethical actions. We cannot agree with this position and note that there is always a potential for disciplinary proceedings. In fact, the imposition of discipline by this Court following proceedings before the Kentucky Bar Association and a hearing by the Board of Governors is the proper procedure for imposing attorney discipline.[30] Indeed, the preamble to the Kentucky Rules of Professional Conduct acknowledges that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." [31]

We find Ridgeway's concern for the enforcement of the Kentucky Rules of Professional Conduct to be commendable, but we do not find the civil arena to be the

---

**24.** *Bender,* 343 S.W.2d at 801 ("Our cases involving controversies in this second class ... have consistently (apparently without exception) required the petitioner to pass the first test; *i.e.* he must show he has no adequate remedy by appeal or otherwise."); *Chauvin,* 175 S.W.3d at 617 ("As discussed above, [petitioner] has an adequate remedy by appeal, thus it cannot claim the protection of the 'certain special cases' exception.").

**25.** *Shake,* 5 S.W.3d at 110 (quoting *Shoney's, Inc.,* 875 S.W.2d at 516).

**26.** *Id.* (emphasis added).

**27.** *Id.* (quoting *Shoney's,* 875 S.W.2d at 516).

**28.** *Id.* (construing *Shoney's,* 875 S.W.2d 514).

**29.** *Id.*

**30.** *Grigsby v. Ky. Bar Ass'n,* 181 S.W.3d 40, 42 (Ky.2005) (holding that the Supreme Court of Kentucky "has the sole authority to admit and discipline attorneys").

**31.** SCR 3.130(XXI). To be sure, we are not presently alleging that Ridgeway's motion and *subsequent* writ proceedings are *nothing more* than mere procedural fencing in this instance.

appropriate venue for attorneys to be disciplined for unethical conduct. This position is brought into sharper focus when considering that civil penalties for ethical violations are likely to cause the innocent client to suffer as much as the culpable attorney. We do not, however, mean to imply that attorney disqualification or other limitations imposed by a trial court are never a proper remedy for an ethical violation. Such remedies may be proper in the civil context when necessary to protect the aggrieved party.[32] That is to say trial court orders disqualifying attorneys for violations of Rule 4.2 are aimed at protecting the interests of the injured party, not punishing the infringing party, who may still be subject to KBA disciplinary proceedings.

### III. CONCLUSION.

For the foregoing reasons, we find that Ridgeway has not met the requirements for the issuance of a writ of mandamus. So we affirm the denial of the writ by the Court of Appeals.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., sitting. All concur. KELLER, J., not sitting.

---

**32.** *See, e.g., Shoney's,* 875 S.W.2d 514.