RENDERED: SEPTEMBER 27, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

## FINAL

2016-SC-000699-MR

DATE 2/14/19 Kim Redmon, DC

PRESBYTERIAN CHURCH (U.S.A.)            APPELLANT


ON APPEAL FROM COURT OF APPEALS

V.                 NO. 2016-CA-000459-OA

JEFFERSON CIRCUIT COURT NO. 15-CI-002975


HON. BRIAN C. EDWARDS            APPELLEE

(JUDGE, JEFFERSON CIRCUIT COURT)


AND


REV. ERIC HOEY            REAL PARTY IN INTEREST


**OPINION OF THE COURT BY JUSTICE WRIGHT**

**<u>AFFIRMING</u>**

Appellant, the Presbyterian Church, appeals from the Court of Appeals' order granting in part and denying in part its petition for a writ to prohibit the trial court from lifting its stay of discovery. The Court of Appeals granted the writ to the extent the trial court should limit discovery to that which was necessary to determine whether the church was entitled to ecclesiastical immunity. For the following reasons, we affirm the Court of Appeals' order.

# I. BACKGROUND

The Presbyterian Ministry Agency (PMA) hired Reverend Eric Hoey as the Director of Evangelism and Church Growth. During his tenure in that position, Hoey acted with other ministers to incorporate an entity separate and apart from the church. Church funds were transferred to the newly-created entity without authorization. The church issued a written warning to Hoey regarding his actions. This warning included findings that Hoey failed to properly manage ministers under his supervision, failed to timely inform his supervisors that he incorporated the entity without authorization, and that Hoey contributed to a culture of non-compliance with PMA and church policies.

The church reported the disciplinary action to Hoey's Presbytery. That notification indicated that Hoey had known about the incorporation and approved a transfer of grant money without ensuring that the church's incorporation criteria were followed. The notification made it clear, however, that Hoey never intended to personally benefit from the funds and that all grant funds were returned. In addition to this disclosure made to the Presbytery, the church also released general information about the incorporation and dissolution of the entity to the denomination.

The church placed Hoey on paid administrative leave for more than six months before terminating his employment. After his termination, Hoey filed a complaint in Jefferson Circuit Court alleging the church defamed him by reporting to independent Presbyterian news agencies and other third parties that he had "committed ethical violations." The church filed a motion for

2

summary judgment. Hoey did not respond to that motion, but, instead, served the church discovery requests.

At a status hearing, the church argued to the trial court that Hoey should not be entitled to discovery until the court ruled on its ecclesiastical-abstention and ministerial-exception defenses. The trial court disagreed with the church and ordered it to respond to Hoey's discovery requests within twenty days.

Following the trial court's discovery ruling, the church petitioned the Court of Appeals for a writ, arguing the trial court had essentially abrogated its immunity by forcing it to participate in discovery without first making a threshold immunity determination. The church also asked the Court of Appeals to consider (for the first time) the issue of its immunity and to dismiss the underlying action on those grounds. The Court of Appeals granted the writ in part, holding the trial court had abused its discretion in allowing broad-reaching discovery, but denied the writ insofar as it would allow discovery related to the immunity issue. The Court of Appeals did not rule on the immunity issue. The church appeals, arguing the Court of Appeals' order did not go far enough. We disagree.

## II. ANALYSIS

The issuance of a writ is an extraordinary remedy, and we have always been cautious and conservative in granting such relief. *Grange Mut. Ins. v. Trude*, 151 S.W.3d 803, 808 (Ky. 2004). The standard for granting petitions for writs of prohibition and mandamus is the same. *Mahoney v. McDonald-*

3

*Burkman*, 320 S.W.3d 75, 77 n.2 (Ky. 2010) (*citing Martin v. Admin. Office of Courts*, 107 S.W.3d 212, 214 (Ky. 2003)). This Court set forth that standard in *Hoskins v. Maricle*:

> A writ . . . may be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

150 S.W.3d 1, 10 (Ky. 2004). Here, there is no argument that the lower court lacked jurisdiction. Therefore, this case falls under the second class of writ, which requires that there be (1) no adequate remedy by appeal and (2) great injustice and irreparable injury.

In the present case, the church has satisfied the initial requirement of no adequate remedy by appeal, as "[o]nce the information is furnished it cannot be recalled." *Bender v. Eaton*, 343 S.W.2d 799, 802 (Ky. 1961). However, the church falls short of meeting the "great and irreparable injury" prong of that test. In *Bender*, our predecessor court stated:

> Compelling a party, in advance of trial, to produce for the benefit of his adversary information or evidence, even assuming he should not be required to produce it under the Rules, probably would not constitute 'great and irreparable injury' within the meaning of that phrase." However, . . . in a certain class of cases, of which this is one, the showing of such grievous injury is not an absolute necessity. . . . [I]f an erroneous order results in a substantial miscarriage of justice and the orderly administration of our Civil Rules necessitates an expression of our views, we may, and in the proper case should, decide the issue presented.

4

*Id.* "This Court has consistently recognized an exception to the irreparable harm requirement in 'certain special cases.'" *Ridgeway Nursing & Rehab. Facility, LLC v. Lane*, 415 S.W.3d 635, 639–40 (Ky. 2013). In such cases, this Court will entertain the petition "provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Bender*, 343 S.W.2d at 801. We review writs under the "certain special cases" exception de novo. *Grange*, 151 S.W.3d at 810.

With that precedent in mind, we will determine if a substantial miscarriage of justice will result if the trial court's ruling regarding discovery is erroneous and if the correction of that error is necessary to the orderly administration of justice.

In *St. Joseph Catholic Orphan Soc'y v. Edwards*, we examined the ecclesiastical-abstention defense; there, we held:

> Like other affirmative defenses recognized by this Commonwealth, ecclesiastical abstention operates in confession and avoidance, meaning that even assuming the plaintiffs allegations to be true, he is nonetheless not entitled to recover. So, . . . we draw an analogy to perhaps the most commonly encountered defense of confession and avoidance, qualified governmental immunity, and aver that the ecclesiastical-abstention defense is to be applied in a manner that is procedurally consistent with the application of qualified governmental immunity.

449 S.W.3d 727, 737 (Ky. 2014). Here, the trial court would have allowed broad discovery regarding the underlying merits of the case before making a ruling as to the church's immunity. However, "[i]mmunity from suit includes protection against the 'cost of trial' and the 'burdens of broad-reaching

5

discovery' . . . ." *Lexington-Fayette Urban Cty. Gov't v. Smolcic*, 142 S.W.3d 128, 135 (Ky. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982)). A party entitled to immunity is immune not only from liability, but also "from the burdens of defending the action." *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006).

Because the church should not be subjected to the broad-reaching discovery allowed under the trial court's order prior to an immunity determination, we affirm the Court of Appeals' denial of discovery which does not pertain to the issue of the church's immunity. "Because immunity is designed to relieve a defendant from the burdens of litigation, it is obvious that a defendant should be able to invoke [it] at the earliest stage of the proceeding. . . . [O]nce the defendant raises the immunity bar by motion, the court must proceed expeditiously." *Rodgers v. Commonwealth*, 285 S.W.3d 740, 755 (Ky. 2009). To allow such broad discovery before the trial court rules on the church's immunity would result in "a substantial miscarriage of justice . . . if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Bender*, 343 S.W.2d at 801. This is simply not the manner in which an immunity case should proceed. If immune, the church should not be subject to the burdens of defending Hoey's defamation action.

However, denying such broad discovery as to the issues underlying the merits of Hoey's defamation claim does not foreclose all discovery in this matter. The trial court's continuation with discovery regarding the church's

6

immunity would neither amount to a substantial miscarriage of justice nor fly in the face of orderly judicial administration. The immunity issue is squarely before the trial court and we will not hinder the parties' access to discovery materials pertaining to that narrow issue. The trial court will be in the best position to control the flow of discovery. In *Kirby v. Lexington Theological Seminary*, we acknowledged that "excessive entanglement [with church doctrine] may be a real possibility during the litigation but . . . the trial judge has adequate discretion to control discovery and the flow of evidence so that if ecclesiastical matters overtake the litigation, the case can be stopped on summary judgment or simply dismissed." 426 S.W.3d 597, 619 (Ky. 2014). We do not believe very limited discovery concerning only the issue of immunity merits the extraordinary remedy of a writ. After all, our case law has made it clear: "[e]xtraordinary writs are disfavored . . . ." *Buckley v. Wilson*, 177 S.W.3d 778, 780 (Ky. 2005).

The church also asks this Court to take up the issue of the church's immunity at this juncture.[1] We decline to do so. We have held, "[t]he decision

---

[1] The dissent would dismiss the underlying defamation claim on grounds of immunity. However, as noted above, this is a determination for the trial court. When addressing this issue, the trial court will need to determine whether Hoey's actions in approving a transfer of grant money without ensuring that the church's incorporation criteria were followed raised an issue of ecclesiastical doctrine (thus giving rise to immunity) or if they amounted to a mere failure to follow organizational procedures. The dissent would require that any action of a religious organization would be beyond judicial review without any discovery to determine whether that action was based upon ecclesiastical doctrine. As we have held:

> the ecclesiastical abstention doctrine is primarily interested in preventing
> any chilling effect on church practices as a result of government
> intrusion in the form of secular courts. But when the case merely
> involves a church, or even a minister, but does not require the

7

of whether immunity applies in a given situation involves the determination of the material facts; however, the question of immunity is one of law and is to be determined by the trial court." *Norton Hosps., Inc. v. Peyton*, 381 S.W.3d 286, 290 (Ky. 2012). Once the trial court rules on the church's immunity, we note that "an order denying a substantial claim of absolute immunity is immediately appealable even in the absence of a final judgment." *Breathitt Cty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009). That is the proper avenue for this case to proceed. We see no need in this matter to open this Court to an issue not yet ripe for our review (and, indeed, one that may never become ripe for our review depending on the proceedings below).

The dissent would dismiss the underlying defamation claim on grounds of immunity. However, as noted above, this is a determination for the trial

---

interpretation of actual church doctrine, courts need not invoke the ecclesiastical abstention doctrine. No entanglement concern arises as a result of the mere reference of religion.

*Kirby*, 426 S.W.3d at 619. That is the issue here to be determined by the trial court—and the reason we hold this case should not end at this juncture.

Furthermore, the dissent asserts "[i]t is absurd to hold that the Church could not be sued for firing Hoey because it falsely found him in violation of Presbyterian ethical policy, while inconsistently holding that the Church can be sued for falsely saying he was fired for violating Presbyterian ethical policy." There are two problems with this position. First, discovery has not been held in this case to determine whether Hoey's actions were a violation of church doctrine or were merely a procedural mistake. Second, there is a vast difference between holding that the relationship between a minister and his congregation requires such a degree of confidence that he must be considered an at-will employee versus considering a defamation claim regarding a written publication stating that the minister acted unethically. The firing would be based upon a problem with the relationship between the minister and his congregation, whereas the written publication of the statement that the minister was unethical could destroy the minister's relationship with the public at large.

8

court—and we should not invade that court's province. Ultimately, this case hinges on whether the lofty writ standard is met. Here, no substantial miscarriage of justice will result even assuming the trial court's ruling regarding narrow discovery relating only to the issue of immunity is erroneous. If the trial court determines that the church is immune, the inquiry need go no further. If that court determines it is not, that decision is immediately appealable. This simply does not rise to the high level necessary for this Court to grant an extraordinary writ. If the lower court proceeds erroneously, there is an adequate remedy by appeal. This case could follow the normal avenues of appeal without this Court accepting an *ordinary* immunity ruling as grounds for an *extraordinary* writ and throwing open the floodgates for such motions. This Court has provided the proper avenue for such a determination—and that is the manner in which the case should proceed.

### III. CONCLUSION

We hold that the church satisfied the "certain special cases" writ criteria as to broad-reaching discovery. However, it failed to meet this lofty standard as to limited discovery the trial court may deem necessary in order to determine whether the church is immune from the present suit. Therefore, if it deems necessary, the trial court should allow that limited discovery to proceed and rule on the issue of immunity expeditiously. The case should not proceed—whether with additional discovery (apart from that the trial court deems necessary in making the immunity determination) or otherwise—until the trial court rules on the threshold immunity issue. This Court declines the

9

church's request to determine the issue of immunity. Therefore, we affirm the Court of Appeals' judgment. The case underlying this writ action should proceed in the trial court consistent with this opinion.

All sitting. Minton, C.J., Hughes, and Keller, JJ., concur. Venters, J., dissents by separate opinion which Cunningham and VanMeter, JJ., join.

VENTERS, J., DISSENTING: Appellant, Presbyterian Church (USA) (the Church), sought in the Court of Appeals, by way of a writ of prohibition, two forms of extraordinary relief: dismissal of the underlying action because the trial court was erroneously proceeding to adjudicate an issue of ecclesiastical polity; and prohibiting the expansive discovery allowed by the trial court into matters reaching well beyond the issue of ecclesiastical polity. The Court of Appeals granted the latter relief but denied the former and the Majority affirms that decision. Because I believe the Church was also entitled to dismissal of the case, I dissent.

Reverend Eric Hoey was a minister employed by the Church to serve as the Director of Evangelism and Church Growth for the Church's Presbyterian Ministry Agency (PMA). According to the Complaint Hoey filed in the trial court, PMA fulfills the Church's ministry and mission functions. Ultimately, Hoey's employment was terminated by the Church pursuant to its own internal disciplinary processes for ministers after the Church's governing body determined that Hoey had violated written policies set forth in the Church's

10

Ethics Policy, contained within the Church's governing document, the Book of Order.

The Church stated the following reasons for terminating Reverend Hoey's employment: he violated the Church's written Ethics Policy; he failed to properly manage the church ministers under his supervision; and without authorization, he incorporated an independent legal entity outside the Church's organizational structure and transferred some of the Church's grant money from the PMA to that entity.[2]

According to Reverend Hoey's Complaint, Church officials, acting within the scope of their employment, said in a newsletter distributed to the Presbyterian community that he was terminated because he "had committed ethical violations and/or engaged in unethical conduct." Hoey claims these statements are actionable as defamation because in his profession, violating Church ethics exposes him to "public ridicule and humiliation, . . . affect[s] his future employment prospects," and otherwise exposes him to "public hatred, ridicule, contempt, or disgrace."

To establish his claim of defamation, Hoey must prove that the Church officials were lying when they said that his conduct violated the Church's ethical rules for its ministers. *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281–82 (Ky. 2014) (A requisite element of a defamation claim is "a false and defamatory statement concerning another."). Granting Hoey the benefit of any

---

[2] The funds were later restored to the PMA.

11

factual dispute, and therefore, accepting as fact that Church officials said he had violated Church ethical policies, the trial court can adjudicate Hoey's claim of defamation *only* by evaluating those policies and determining if the Church officials' statements are true.

There is no doubt that the Church's governing body decided that Hoey had violated the policies, so adjudicating the defamation claim requires a trial process during which the judge or jury must examine the Church's ethical policies for its ministers and decide if Hoey had, indeed, violated them. In a companion lawsuit on this very same claim, the Court of Appeals has already determined that such an inquiry by a trial court violates the Ecclesiastical Abstention Doctrine. *See Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467, 472 (Ky. App. 2017).[3] I commend that decision to the readers of this opinion.

It is immediately apparent from the face of Hoey's Complaint that his claim can be sustained only by second-guessing the decision of the Church's governing body that Hoey violated the Church's ethical policies. The only way that Hoey can show that Church officials falsely stated that he violated the Ethical Policy contained in the Book of Order is to prove that he did not violate that policy.

I respectfully submit that only the Church can make that determination and the Government, through its courts, legislature, or executive agencies,

---

[3] The rationale expressed by the Court of Appeals in *Dermody* is, in my view, unassailable.

12

cannot supersede that decision. No discovery at all is necessary to establish that unassailable fact; any compulsory inquiry into the matter imposed upon the Church by the Government through the Courts treads over the Free Exercise of Religion Clause. There are no "neutral principles of law," as explained below, that can be applied to resolve the matter. Hoey's complaint makes clear that any inquiries into the controversy will be "dependent on the question of doctrine, discipline, ecclesiastical law, rule, or custom, or church government [.]" Id. at 474.

The Church's governing body adjudicated that Hoey had violated specific provisions of the Church's written Ethics Policy. Based upon these adjudications, the Church determined that Hoey "had committed ethical violations and/or engaged in unethical conduct." A refutation of those adjudications would require our secular courts to engage in a review and critique of the Church's underlying religious values and doctrines, an undertaking specifically precluded by the Ecclesiastical Abstention Doctrine. Id. at 472. And because the Church's adjudications are not subject to such refutation in a secular court setting, it follows that the falsity of those adjudications may not be established in a defamation case so as to establish an indispensable element of Hoey's defamation claim.

The First Amendment Right to the Free Exercise of Religion guarantees a church's authority to hire and fire its ministers at will, unfettered by government regulation.

> The members of a religious group put their faith in the hands of their ministers. Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs. By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions.

*Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 188–89 (2012).

This Court has fully adopted the ministerial exception, recognizing that "the secular courts have no competence to review the employment-related claims of ministers against their employing faith communities" because the minister is the chief instrument by which the church seeks to fulfill its purpose." *Kirby v. Lexington Theological Seminary*, 426 S.W.3d 597, 605 (Ky. 2014) (quotations marks and internal citations omitted). The "law should not be construed to govern the relationship of a church and its ministers." *Id.* (citation omitted). Kentucky courts have long honored the belief, known as the doctrine of ecclesiastical abstention, that the true "Free Exercise of Religion" compels the courts to stay out of intra-church disputes based upon the church's rules of faith and practice.

We emphasized in *Kirby*:

14

It would be difficult for the ecclesiastical abstention doctrine to be more clearly expressed than in such matters relating to the faith and practice of the church and its members, **the decision of the church court is not only supreme, but is wholly without the sphere of legal or secular judicial inquiry.** Separation of church and state, being a vibrant principle historically in this Commonwealth, requires that **the secular courts have no jurisdiction[4] over ecclesiastical controversies and will not interfere with religious judicature or with any decision of a church tribunal relating to its internal affairs, as in matters of discipline or excision, or of purely ecclesiastical cognizance.**

*Id.* at 618 (internal quotations marks and citations omitted) (emphasis added).

Only when a dispute hinges upon "neutral principles of law" can the Court of Justice intercede. *Id.* "Neutral principles of law" means conventional legal principles and theories requiring "no inquiry into religious doctrine." *Jones v. Wolf,* 443 U.S. 595, 603 (1979). Such principles are:

completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and polity. The method relies exclusively on objective, well-established concepts [such as] trust and property law familiar to lawyers and judges. It thereby promises to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice.

*Id.*

In light of *Hosanna-Tabor* and *Kirby,* there is no doubt that Reverend Hoey is precluded by the Ecclesiastical Abstention Doctrine and the ministerial

---

[4] We later clarified that the term "no jurisdiction," as used here, refers to specific case jurisdiction and is not intended to indicate that Kentucky courts lacked subject-matter jurisdiction. *St. Joseph Catholic Orphan Society v. Edwards,* 449 S.W.3d 727, 736 (Ky. 2014).

15

exception from asserting a claim of wrongful termination based upon the Church's decision that he violated Church ethical rules. Neither the Court of Justice nor any branch of the secular government has the authority to intrude upon the validity of the Church's decision about the meaning of its minister's Ethics Policy and the conduct that constitutes a violation. In a matter "relating to the faith and practice of the church and its members, the decision of the church court is not only supreme but is wholly without the sphere of legal or secular judicial inquiry." *Kirby*, 426 S.W.3d at 618.[5] This matter relates to the faith and practice of the Church's ministry.

It is absurd to hold that the Church could not be sued for firing Hoey because it falsely found him in violation of Presbyterian ethical policy, while inconsistently holding that the Church can be sued for falsely saying he was fired for violating Presbyterian ethical policy. Hoey cannot circumvent the foregoing Free Exercise principles by demanding secular court intrusion into the validity of the Church's interpretation and application of its own Ethics Policy for its ministers, and the validity of the disciplinary measures of its ministers, by simply recasting the same claim as defamation rather than wrongful termination when no neutral principle of law is relied upon.

If the Church's governing body determined that Hoey's conduct violated Church policy, the Church cannot be subjected to a defamation suit for saying

---

[5] Quoting *Marsh v. Johnson*, 82 S.W.2d 345 (Ky. 1935) (Overruled on other grounds by *St. Joseph Catholic Orphan Society v. Edwards*, 449 S.W.3d 727(Ky. 2014)).

16

so. And to say otherwise, that he did not violate Church ethical policy, requires the Court to re-adjudicate the Church's disciplinary decision.

The Court of Appeals erred in allowing further discovery on the applicability of the Ecclesiastical Abstention Doctrine because the applicability of the doctrine is evident on the face of the Complaint. The Church should not be required to suffer the limited intrusion allowed under this Majority Opinion into its Constitutionally-protected domain, nor should the Church bear the additional expense and burden of this additional litigation when its immunity from same is self-evident.

I respectfully submit that the Court of Appeals erred by denying the writ sought by the Church and the Majority opinion does the same. Our conventional writ standard is met because there is no remedy by way of appeal or otherwise for this judicial intrusion into what is clearly and constitutionally the Church's exclusive domain of ecclesiastic polity. For that reason, I respectfully dissent.

Cunningham and VanMeter, JJ., join.

COUNSEL FOR APPELLANT:

John O. Sheller
Stoll Keenon Ogden, PLLC

Steven Clark
Stoll Keenon Ogden, PLLC

COUNSEL FOR REAL PARTY IN INTEREST:

Roger Dale Warren
Louisville, KY

17