RENDERED: JUNE 15, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2022-SC-0145-MR

STATE FARM MUTUAL AUTOMOBILE                                    APPELLANT
INSURANCE COMPANY


                        ON APPEAL FROM COURT OF APPEALS
V.                              NO. 2021-CA-1131
                    JEFFERSON CIRCUIT COURT NO. 20-CI-005874


HONORABLE BRIAN C. EDWARDS, JUDGE                              APPELLEE
JEFFERSON CIRCUIT COURT

AND

BETTY IRVIN; DEBORAH COMBS;
AND KENTUCKY FARM BUREAU
INSURANCE COMPANY          REAL PARTIES IN INTEREST/APPELLEES


## OPINION OF THE COURT BY JUSTICE KELLER

### AFFIRMING

State Farm Mutual Automobile Insurance Company (State Farm) appeals from the Court of Appeals' denial of its petition for a writ of prohibition to prevent Judge Brian C. Edwards of the Jefferson Circuit Court from enforcing his discovery orders. After a thorough review of the record presented and the applicable law, we affirm the Court of Appeals.

## I. BACKGROUND

On June 5, 2018, Betty Irvin was involved in an automobile collision with Deborah Combs. Combs was insured by State Farm. The day after the accident, a State Farm Claim Specialist contacted Irvin, a 73-year-old widow,

by phone and attempted to settle the claim. This phone conversation occurred while Irvin was at the body shop recommended by State Farm, and Irvin alleges that she is hard of hearing. Nevertheless, State Farm asserts that during this phone conversation, State Farm and Irvin reached an oral agreement whereby Irvin accepted $1,530.00 to settle the claim.

On October 12, 2020,[1] Irvin filed suit in Jefferson Circuit Court against Combs and State Farm.[2] She asserted a negligence claim against Combs and a third-party statutory bad faith claim under Kentucky's Unfair Claims Settlement Practices Act (the "UCSPA"), KRS 304.12-230, against State Farm. Concurrently with filing her complaint, Irvin served interrogatories and requests for discovery on State Farm.

On November 12, 2020, State Farm filed a motion to bifurcate for trial the bad faith claim from the negligence claim and to stay discovery on the bad faith claim until the negligence claim was resolved. State Farm argued that because both Combs and State Farm asserted the oral settlement agreement as a defense to the negligence claim, the trial court would first need to determine whether the oral settlement agreement was enforceable.

---

[1] In January of 2020, Irvin and another named plaintiff filed a class action lawsuit against State Farm. This lawsuit was removed to federal court, and Irvin eventually moved to dismiss it. Her motion was granted, and the lawsuit was dismissed without prejudice.

[2] Irvin also named Kentucky Farm Bureau Insurance Company, her insurer, as a defendant; however, her claim against Farm Bureau is not relevant to this writ petition appeal.

2

On January 5, 2021, the trial court entered an order bifurcating the bad faith claim against State Farm from the other claims. The order did not address State Farm's motion to stay discovery. State Farm subsequently filed an "Amended Motion to Limit and Stay Discovery," arguing that the trial court should not only stay discovery on the bad faith claim but should also stay discovery as to all issues except those related to the enforceability of the oral settlement agreement. State Farm argued both that the failure to stay discovery would result in a burdensome discovery process that might later prove moot and also that the failure to stay discovery would require it to divulge privileged information.

On February 19, 2021, the trial court entered an order denying State Farm's motion to limit and stay discovery. The trial court found "a preemptive stay on discovery based on speculative concerns is not justified." It further stated, "The question regarding whether there was an agreement reached by the parties is intertwined with the other factual questions in dispute. The [c]ourt believes that this case is likely to progress more expeditiously without an Order limiting or holding discovery in abeyance." Finally, the trial court instructed the parties that "if during the course of the Discovery process, a party deems it necessary to seek a protective order in order to prevent the disclosure of privileged information, as always, they may seek such relief from this [c]ourt upon the demonstration of the requisite showing of good cause."

For reasons that are not apparent from our limited record, on March 11, 2021, the trial court entered an order bifurcating the bad faith claim from the

"bodily injury claims . . . for purposes of trial" and staying discovery on the bad faith claim until after the negligence claim was resolved. Then, on May 6, 2021, the trial court entered an order vacating its prior orders entered on January 5 and March 11. This left the February 19 order denying State Farm's motion to limit and stay discovery as the most recent order to govern the case.

On May 27, 2021, State Farm served answers to Irvin's interrogatories and responses to her requests for production of documents. In doing so, State Farm not only made numerous general objections, but also qualified its response to almost every single discovery request with at least one individual objection. Despite the trial court's previous ruling, State Farm objected to several requests on the basis that they were "not relevant to whether the oral settlement agreement is enforceable." Further, State Farm objected to several of the requests as violative of the attorney-client privilege and work-product doctrine but failed to move for a protective order as suggested by the trial court.

On July 7, 2021, Irvin filed a motion "to compel State Farm to provide its entire claims file and provide complete responses to the discovery served upon it with the Complaint." State Farm responded to this motion, arguing that Irvin did not make a good faith effort to resolve the discovery dispute before filing the motion, did not provide sufficient notice of the hearing on the motion, and did not support the motion with an attached memorandum, all as required by local rules. Then, on July 28, 2021, State Farm filed a supplemental response, asserting that its discovery responses complied with the trial court's previous

4

orders and that the trial court should stay further discovery on the bad faith claim.

On August 20, 2021, the trial court entered an opinion and order denying State Farm's renewed motion to stay and granting Irvin's motion to compel. The trial court acknowledged that "Kentucky precedent does favor bifurcation and a stay of discovery on bad faith claims until after the tort claim is disposed of," but found that "the unique intertwined nature of the claims here makes such separation impractical." The trial court went on to order "State Farm to supplement its responses in accordance with [Irvin]'s Motion within 20 days of issuance of this Order."

On August 26, 2021, State Farm filed a motion to reconsider arguing that once the trial court decided to deny its request for a stay of discovery, the court should have considered the validity of the legal grounds upon which State Farm objected to the discovery requests, including relevancy, breadth, undue burden, attorney-client privilege, work-product doctrine, and trade secrets. On September 9, 2021, the trial court entered an order denying State Farm's motion "without further hearings on the matter."

State Farm then filed a petition for a writ of prohibition in the Court of Appeals seeking to prevent Judge Edwards from enforcing his discovery orders. State Farm argued that Irvin's bad faith claim against it was not yet ripe and therefore, Irvin was not entitled to discovery on that claim. State Farm further argued that much of the discovery sought was protected by the attorney-client

5

privilege or the work-product doctrine. The Court of Appeals denied State Farm's writ petition, and State Farm appealed to this Court.

## II. ANALYSIS

We begin our writ analysis by reiterating that "[t]he issuance of a writ is an extraordinary remedy that is disfavored by our jurisprudence. We are, therefore, 'cautious and conservative both in entertaining petitions for and in granting such relief.'" *Caldwell v. Chauvin*, 464 S.W.3d 139, 144–45 (Ky. 2015) (citing *Ridgeway Nursing & Rehab. Facility, LLC v. Lane*, 415 S.W.3d 635, 639 (Ky. 2013); *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961)). Writs "are truly extraordinary in nature and are reserved exclusively for those situations where litigants will be subjected to substantial injustice if they are required to proceed." *Indep. Order of Foresters v. Chauvin*, 175 S.W.3d 610, 615 (Ky. 2005).

Extraordinary writs may be granted in two classes of cases. The first class requires a showing that "the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court." *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004). The second class requires a showing that "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise." *Id.* "No adequate remedy by appeal" means that the party's injury "could not thereafter be rectified in subsequent proceedings in the case." *Chauvin*, 175 S.W.3d at 614–15 (quoting *Bender*, 343 S.W.2d at 802).

6

This second class also usually requires a showing that "great injustice and irreparable injury will result if the petition is not granted." *Hoskins*, 150 S.W.3d at 10. There are, however, special cases within the second class of writs that do not require a showing of great injustice and irreparable injury. In those special cases, a writ is appropriate when "a substantial miscarriage of justice" will occur if the lower court proceeds erroneously, and correction of the error is necessary "in the interest of orderly judicial administration." *Chauvin*, 175 S.W.3d at 616 (quoting *Bender*, 343 S.W.2d at 801).

> Regarding the certain special cases exception, we have stated,
>
> [I]n certain special cases this Court will entertain a petition for prohibition in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration. It may be observed that in such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury.

*Bender*, 343 S.W.2d at 801. We have applied the certain special cases exception only rarely and tend to limit this exception to "situations where the action for which the writ is sought would violate the law, e.g., by breaching a tightly guarded privilege or by contradicting the requirements of a civil rule." *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 808 (Ky. 2004) (footnote omitted) (citing *Wal-Mart Stores, Inc. v. Dickinson*, 29 S.W.3d 796, 803, 801–02 (Ky. 2000); *Bender*, 343 S.W.2d at 803). Even in cases seeking a writ under the certain special cases exception, the party seeking the writ must show that there is no adequate remedy by appeal. *Chauvin*, 175 S.W.3d at 617.

The standard for appellate review of a lower court's decision in a writ action is as follows:

> We employ a three-part analysis in reviewing the appeal of a writ action. We review the Court of Appeals' factual findings for clear error. Legal conclusions we review under the de novo standard. But ultimately, the decision whether or not to issue a writ of prohibition is a question of judicial discretion. So review of a court's decision to issue a writ is conducted under the abuse-of-discretion standard. That is, we will not reverse the lower court's ruling absent a finding that the determination was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

*Appalachian Racing, LLC v. Commonwealth*, 504 S.W.3d 1, 3 (Ky. 2016) (citations omitted).

State Farm argues that the Court of Appeals erred in two ways. First, State Farm argues that by denying its writ petition, the Court of Appeals erroneously allowed "discovery on a bad faith claim that has not accrued and is not yet ripe; discovery that is unrelated to the pending tort claim; and discovery that depends on legal theories Kentucky law does not recognize." Second, State Farm argues that the Court of Appeals erroneously allowed discovery of materials that are protected by the attorney-client privilege and the work-product doctrine. State Farm acknowledges that the trial court was acting within its jurisdiction and seeks a writ of the second class, including under the certain special cases exception.

To begin, State Farm has shown that there is no adequate remedy by appeal for either of these alleged errors. In *Grange Mutual Insurance Co. v. Trude*, where the insurance company sought a writ arguing that "the trial court's order required burdensome production of irrelevant information and

8

disclosure of privileged trade secrets," we held "that there will rarely be an adequate remedy on appeal if the alleged error is an order that allows discovery." 151 S.W.3d at 806, 810. "Once the information is furnished it cannot be recalled . . . . The injury suffered . . . will be complete upon compliance with the order and such injury could not thereafter be rectified in subsequent proceedings in the case." *Bender*, 343 S.W.2d at 802. Thus, we next must determine if State Farm has made the requisite showing that it will either suffer irreparable harm or that it is entitled to a writ under the certain special cases exception. If State Farm has made this showing, then we must determine if the trial court erred in ordering the disputed discovery. We address each of State Farm's arguments in turn.

First, State Farm argues that the trial court's discovery order and the Court of Appeals' subsequent denial of its writ petition erroneously allows "discovery on a bad faith claim that has not accrued and is not yet ripe; discovery that is unrelated to the pending tort claim; and discovery that depends on legal theories Kentucky law does not recognize." State Farm asserts that it is entitled to a writ under the certain special cases exception to remedy this error.

As discussed above, we will only entertain writs under the certain special cases exception if correction of the alleged trial court error "is necessary and appropriate in the interest of orderly judicial administration." *Id.* at 801. We have further explained that we can issue a writ if "an erroneous order results in a substantial miscarriage of justice and the orderly administration of our

Civil Rules necessitates an expression of our views." *Id.* at 802. In this case, we see no such substantial miscarriage of justice or threat to the orderly administration of the judiciary or our Civil Rules.

> Under Kentucky Rule of Civil Procedure (CR) 26.02(1),
>
> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Under this rule, "[t]he question of relevancy is more loosely construed upon pre-trial examination than at the trial, and the Rule requires only relevancy to the subject matter involved in the action." *Maddox v. Grauman,* 265 S.W.2d 939, 941 (Ky. 1954).

The case underlying this writ petition is rather unique because State Farm's defense to the tort claim is, in large part, the basis for Irvin's bad faith claim. The trial court, in its discretion, chose not to bifurcate the claims or to stay discovery on the bad faith claim. The trial court did so after concluding that the claims were "unique[ly] intertwined" such that separation of them was "impractical." The trial court is in the best position to make this determination, and further, is in the best position to make relevancy determinations during the discovery process.

Admittedly, in cases where both a tort claim and a bad faith claim are alleged, best practice will usually be for the trial court to bifurcate the claims for trial and to stay discovery on the bad faith claim until the tort claim is

10

resolved. However, we decline to create a rule that **requires** bifurcation and a discovery stay in every case because we cannot foresee every conceivable situation. One such unusual circumstance in which bifurcation and a discovery stay may not be appropriate or necessary presents itself today. Thus, the discretion to bifurcate and stay discovery remains with the trial courts.

In this case, given the unique intertwined nature of the claims alleged by Irvin, the administration of justice will not suffer a great and irreparable injury if we fail to correct the trial court's alleged error. *See Bender*, 343 S.W.2d at 801. Accordingly, we affirm the Court of Appeals' denial of State Farm's petition for a writ of prohibition.

We next turn to State Farm's second argument, which is that the trial court's discovery orders erroneously allow discovery of materials that are protected by the attorney-client privilege and the work-product doctrine. To remedy this alleged error, State Farm seeks a writ of the second class, both under the usual second-class rubric as well as under the certain special cases exception.

As previously explained, State Farm does not have an adequate remedy by appeal for this alleged error. Further, this Court has made clear that a breach of the attorney-client privilege would result in a substantial miscarriage of justice. *St. Luke Hosps., Inc. v. Kopowski*, 160 S.W.3d 771, 775 (Ky. 2005). Thus, State Farm has shown the existence of the prerequisites for issuance of a writ under the certain special cases exception. Finally, we have previously held that "great injustice and irreparable injury will result" if "discovery of work

11

product information [is] allowed in error." *O'Connell v. Cowen,* 332 S.W.3d 34, 39 (Ky. 2010). Thus, State Farm has also shown the existence of the prerequisites for issuance of a writ of the second class. We now must determine whether the trial court erred in ordering the disputed discovery.

The attorney-client privilege is codified in Kentucky Rule of Evidence (KRE) 503. The "privilege attaches to a confidential communication 'made to facilitate the client in his/her legal dilemma and made between two of the . . . parties'" delineated in the rule. *Kopowski,* 160 S.W.3d at 776 (quoting *Haney v. Yates,* 40 S.W.3d 352, 355 (Ky. 2000)). Furthermore, KRE 503(a)(5) explains that "[a] communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." "[T]he burden is on the party claiming the privilege to prove that it exists as to the communications so claimed." *Kopowski,* 160 S.W.3d at 775 (citations omitted).

The work-product doctrine is found in CR 26.02(3)(a), which states,

> [A] party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

12

The attorney-client privilege and the work-product doctrine differ "in what each covers, when and how applied, and whether protected communications are absolutely protected as in the former but not in the latter. In fact CR 26, which codifies the work-product doctrine, specifically exempts communications protected by the attorney-client privilege from its disclosure provisions." *Kopowski*, 160 S.W.3d at 777 (internal citation omitted).

If a party wishes to assert either the attorney-client privilege or the work-product doctrine, he can provide a privilege log including a "thorough description of the records" withheld to allow a court to determine if those withheld records actually fall within the privilege. *Trude*, 151 S.W.3d at 818. The privilege log must contain a description of the documents "sufficient to establish the existence of the privilege." *Collins v. Braden*, 384 S.W.3d 154, 164 (Ky. 2012). Alternatively, the trial court can conduct an *in camera* review of the documents in question; however, such review "can overly burden a trial court, especially in litigation where many documents are claimed to be privileged." *Id.*

To this Court, while State Farm argues broadly that Irvin's interrogatories and requests for production of documents require the dissemination of material protected by the attorney-client privilege and the work-product doctrine, State Farm specifically complains about Requests No. 9, 10, 11, 22, and 27 and Interrogatory No. 30.[3] State Farm argues that these requests and interrogatories "on their face, call for privileged materials."

---

[3] In its brief, State Farm incorrectly identifies this Interrogatory as No. 31.

State Farm argues that the requests seek "*all documents* related to legal claims asserted against State Farm" and "production of the *complete* claim file materials including related documents and internal memoranda." While these broad requests may seek some documents that are indeed protected by a privilege, they certainly also seek documents that are not protected. It is incumbent upon State Farm to specifically identify the documents that it claims are protected so that the trial court, and this Court on a writ review, can determine if they are in fact protected. State Farm has failed to do so.

State Farm's privilege log identified hundreds of pages of documents that were either withheld or redacted. Each set of documents was identified as protected by attorney-client privilege, work-product doctrine, general confidentiality, or some combination of the three. Each also contained a description of the documents, but these descriptions are too vague to allow for a determination of whether the documents contained protected materials. For example, a portion of the claim file totaling over one hundred pages was described as: "Auto Claim File Print – File Notes, System Generated, Tasks, File Changes, Financial Changes, Performer Changers & Segment Tier Changes from 06/05/18 to 09/16/20 re: liability assessment, insureds property damage claims, evaluation of Attorney claims and response to lawsuit. ***Partial Redactions***." State Farm alleged that those documents are protected by the work-product doctrine, the attorney-client privilege, and confidentiality. However, no other details are given. This is insufficient to establish the existence of the privilege. *See id.* ("[A] party claiming the privilege could

14

produce a detailed privilege log with descriptions of the documents sufficient to establish the existence of the privilege (i.e., **more than their titles**)." (emphasis added)).

The limited information in State Farm's privilege log does not "provide the court with sufficient information to show the existence of the elements of the privilege and to allow review of that decision by higher courts." *Id.* at 164–65. "Without more certainty about the content of those documents, a reviewing court cannot determine whether any statements are even in the documents or whether any statements are covered by the privilege." *Id.* at 164. Thus, State Farm did not meet its burden to establish its entitlement to the privilege. As such, the Court of Appeals did not err in denying State Farm's writ petition regarding the requests for production of documents.

Interrogatory No. 30 presents a slightly different situation, as it calls for State Farm to provide information as opposed to documents and arguably explicitly requests information covered by the attorney-client privilege. Interrogatory No. 30 asks, "Do you claim to have relied upon the advice of counsel in evaluating the Plaintiff's claims? If your answer is affirmative, please identify counsel and describe with specificity the advice of counsel which State Farm says it heard or relied upon." State Farm responded to this interrogatory by stating,

> State Farm objects to this Interrogatory on the grounds that it is irrelevant to whether the oral settlement agreement is enforceable, not reasonably calculated to lead to the discovery of admissible evidence, and requests information protected by the attorney-client and work product privileges. Further, it is undisputed that oral settlement agreements are enforceable under Kentucky law.

15

To best analyze this interrogatory, we break it down into parts. First, the question "Do you claim to have relied upon the advice of counsel in evaluating the Plaintiff's claims?" does not seek the content of communication that is protected by the attorney-client privilege or information that is protected by the work-product doctrine. The next part of the interrogatory asks State Farm to identify counsel if its answer to the previous question was affirmative. Again, this does not seek the content of communication that is protected by the attorney-client privilege or information that is protected by the work-product doctrine. Finally, the interrogatory asks State Farm to "describe with specificity the advice of counsel which State Farm says it heard or relied upon." Upon its face, the aforementioned arguably could require that State Farm divulge information protected by the attorney-client privilege. However, because State Farm did not respond to the initial question at all, never mind responding in the affirmative, we have no way to know whether the interrogatory would **actually** require a violation of the privilege. Thus, we cannot hold that the trial court erred in ordering State Farm to answer Interrogatory No. 30. Accordingly, we also cannot hold that the Court of Appeals erred in declining to grant State Farm's petition for a writ of prohibition. If State Farm eventually answers the first part of Interrogatory No. 30 in the affirmative, it can again assert a privilege, and the trial court will then be required to determine if the privilege applies, given the unique circumstances of the claims at issue in this case.

Finally, we must address State Farm's contention that it offered to provide the withheld documents for an *in camera* review. We first note that it

16

appears State Farm never explicitly moved for an *in camera* review but merely indicated in a single filing that the trial court could review the documents *in camera* if the trial court had concerns. Further, we have noted that the *in camera* review method of asserting a privilege

> can have its limitations. For example, it requires the trial court to "describe the documents" or "recite any factual bases" supporting its decision to facilitate appellate court review. . . . More importantly, *in camera* review can overly burden a trial court, especially in litigation where many documents are claimed to be privileged.

*Id.* at 164 (citations omitted). Although we do not discount the value of the *in camera* review method of establishing a privilege, we urge parties to be cognizant of the trial court's limited time and resources and to be discerning regarding the documents it may request the trial court review *in camera.* The *in camera* review method should not be utilized as a way to thrust the burden of determining privilege onto the trial court. Litigants should attempt in good faith to separate out materials that are not privileged and only ask the trial court to review those materials that it truly believes are protected by a privilege. Further, as this case proceeds in the trial court, nothing in this Opinion should be construed as limiting the availability of protective orders regarding the documents disclosed.

## III.    CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals.

All sitting. All concur.

COUNSEL FOR APPELLANT:

David T. Klapheke
Boehl, Stopher & Graves, LLP

Katherine Yarger
Lehotsky Keller, LLP

APPELLEE:

Honorable Brian C. Edwards, Judge
Jefferson Circuit Court

COUNSEL FOR REAL PARTY IN INTEREST/APPELLEE, DEBORAH COMBS:

Curtis Lee Sitlinger
Sitlinger Law

COUNSEL FOR REAL PARTY IN INTEREST/APPELLEE, BETTY IRVIN:

Richard Martin Breen
Gregory Adam Redden
Richard Breen Law Offices, PSC

COUNSEL FOR REAL PARTY IN INTEREST/APPELLEE, KENTUCKY FARM
BUREAU INSURANCE COMPANY:

Marc L. Breit
Scott Edward Miller
Breit Law Office, PLLC

COUNSEL FOR AMICUS, KENTUCKY DEFENSE COUNSEL, INC.:

Colleen Orsella Davis
Phillips Parker Orberson & Arnett, PLC

COUNSEL FOR AMICUS, NATIONAL ASSOCIATION OF MUTUAL INSURANCE
COMPANIES:

Darrin Winn Banks
Porter, Banks, Baldwin & Shaw, PLLC

Kendra N. Beckwith
Lewis Roca Rothgerber Christie, LLP